UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA SEMBACH,<br><br>    Plaintiff,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC and M&T BANK CORPORATION,<br><br>    Defendants. | Case No. 1:20-cv-00752 |

**COMPLAINT**

**NOW COMES** Plaintiff, CYNTHIA SEMBACH, by and through her undersigned counsel, complaining of Defendants LAKEVIEW LOAN SERVICING, LLC and M&T BANK CORPORATION (collectively "Defendants"), as follows:

**NATURE OF THE ACTION**

1. This action is seeking damages for Defendants' breach of contract, conversion, intentional infliction of emotional distress, intrusion upon seclusion, trespass to property, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*).

**PARTIES**

2. CYNTHIA SEMBACH ("Plaintiff") is a natural person domiciled in the State of Indiana.

3. LAKEVIEW LOAN SERVICING, LLC ("Lakeview") is a limited liability company organized and existing under the laws of the state of Delaware. Lakeview is a national

1

mortgage originator and servicer. Lakeview originates and services thousands of mortgage loans nationwide.

4. Lakeview maintains its principal place of business at 4425 Ponce De Leon Boulevard, Coral Gables, Florida 33146.

5. Lakeview's sole member is Bayview MSR Opportunity Corp. ("Bayview MSR").

6. Bayview MSR is a corporation organized and existing under the laws of the state of Delaware.

7. Lakeview is a citizen of the state of Delaware.[1]

8. M&T BANK CORPORATION ("M&T Bank") is a corporation organized and existing under the laws of the state of New York. M&T Bank is a national mortgage servicer. M&T Bank services thousands of mortgage loans nationwide.

9. M&T Bank maintains its principal place of business at One M&T Plaza, 8th Floor, Buffalo, New York, 14203.

## JURISDICTION AND VENUE

10. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because (1) complete diversity of citizenship exists, and (2) the amount in controversy exceeds the sum or value of $75,000.00.

11. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

---

[1] For diversity jurisdiction purposes, the citizenship of a limited liability company (LLC) is the citizenship of each of its members. *Camico Mut. Ins. Co. v. Citizens Bank*, 473 F.3d 989, 992 (7th Cir. 2007).

**FACTUAL ALLEGATIONS**

12. On October 7, 2015, Plaintiff executed a mortgage ("Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. as nominee for GMC Mortgage, Inc. d/b/a GMC Financial, #1820 ("MERS").

13. The Mortgage secured the purchase of Plaintiff's property located at 4019 206th Street, Matteson, Illinois 60443 ("Property" or "Plaintiff's Property").

14. The Mortgage secured a promissory note executed by Plaintiff in the amount of $127,325.00 ("Loan").

15. In August 2016, Plaintiff unexpectedly lost her job.

16. In August 2016, Cenlar was the mortgage servicer for the Loan and Mortgage.

17. After losing her job, Plaintiff promptly contacted Cenlar to request retention and non-retention alternatives to foreclosure.

18. Cenlar informed Plaintiff she was not eligible for retention programs, but agreed to evaluate Plaintiff for non-retention alternatives to foreclosure (e.g. short sale).

19. In September 2016, Plaintiff defaulted on the Loan by failing to make monthly payments required by the Loan.

20. On December 28, 2016, MERS executed an Assignment of Mortgage in favor of Lakeview.

21. In February 2017, after securing employment in the state of Indiana, Plaintiff moved out of the Property and relocated to Fort Wayne, Indiana.

22. Despite her relocation, Plaintiff left a significant amount of her personal property at the Property.

23. After relocating to Indiana, Plaintiff made weekly visits to the Property in an effort to maintain it and keep it in good condition.

24. Specifically, Plaintiff maintained utility services for the Property and kept the Property in a clean condition to ensure that the Property remained in excellent habitable condition.

25. After relocating, Plaintiff discussed the possibility of a short sale with Cenlar in an effort to satisfy the Loan.

26. Cenlar advised Plaintiff that it would be open to a short sale and for Plaintiff to contact Cenlar once Plaintiff secures a short sale offer.

27. On May 18, 2017, Plaintiff received a short sale offer from a third party for $130,000.00.

28. Immediately after receiving the short sale offer, Plaintiff submitted a complete "Short Sale Package" to Cenlar.

29. The "Short-Sale Package" included all information and documents necessary to facilitate the short sale.

30. On June 2, 2017, Lakeview acquired the Loan and assigned M&T Bank as the servicer for the Loan.

31. On June 8, 2017, M&T Bank acknowledged receipt of the "Short Sale Package" and corresponding Loss Mitigation Application.

32. On June 13, 2017, M&T Bank sent Plaintiff a correspondence acknowledging that Plaintiff's Loss Mitigation Application was complete.

33. On July 7 2017, M&T Bank sent Plaintiff a correspondence informing Plaintiff that she was approved for the HUD Pre-Foreclosure Sale program.

34. The approval letter expressly stated: "[i]f the property is vacant or becomes vacant during marketing, you must inform your lender immediately and ensure that the property is protected from freeze damage by 'winterizing' plumbing pipes."

35. Soon thereafter, Plaintiff submitted additional documents necessary to complete the short sale process and M&T Bank acknowledged receipt of the same on August 3, 2017.

36. At all times relevant, Plaintiff remained in constant contact with M&T Bank.

37. At no time did Plaintiff inform Lakeview or M&T Bank that the Property was vacant.

38. At all times relevant, the Property was furnished and well maintained.

39. On August 25, 2017, Plaintiff visited the Property as she did weekly after relocating to Fort Wayne, Indiana.

40. During this visit, Plaintiff discovered that her realtor's lockbox was missing and that the Property was unlocked.

41. After further investigation, Plaintiff discovered the locks to the Property's doors and sheds were changed.

42. Upon entering the Property, Plaintiff discovered that (1) the Property was "winterized;" (2) the windows were open; (3) the air conditioning was turned down to 50 degrees Fahrenheit; (4) the curtains were removed; and (5) the appliances were disconnected.

43. Moreover, Plaintiff discovered that food was missing from the food cabinets and that some of her antiques and mementos were missing from the Property.

44. On August 27, 2017, enraged by the unauthorized trespass to the Property, Plaintiff called M&T Bank to inform M&T Bank of her startling discovery.

45. In response, M&T Bank informed Plaintiff that it unilaterally deemed the Property "abandoned" and that M&T Bank was exercising its right to possession of the Property.

46. Moreover, M&T Bank repeatedly ignored Plaintiff's grievance regarding her missing personal property and did not offer to compensate Plaintiff for the missing personal property.

47. On September 1, 2017, M&T Bank informed Plaintiff that Plaintiff's application for the HUD Pre-Foreclosure Sale program was approved.

48. On or around September 28, 2017, Plaintiff submitted another contract for $130,000.00 to M&T Bank for approval.

49. On December 12, 2017, M&T Bank informed Plaintiff that it could not approve Plaintiff's short sale as "[t]here are unacceptable terms on the HUD1."

50. Confused by M&T's vague statement, Plaintiff pressed M&T Bank for more information.

51. In response, M&T Bank informed Plaintiff that the short sale could not be approved because the Property "needed repairs."

52. However, M&T Bank refused to inform Plaintiff what repairs were needed.

53. Plaintiff continued her efforts to get approval for the short sale to no avail.

54. On February 23, 2018, M&T Bank informed Plaintiff that Plaintiff's Mortgage was forwarded to attorneys for foreclosure proceedings and that all communications moving forward must be sent to the attorneys.

55. On March 9, 2018, Lakeview initiated mortgage foreclosure proceedings against Plaintiff and the Property.

## **DAMAGES**

56. As result of Defendants' unlawful conduct, Plaintiff suffered significant damages, including but not limited to, endless stress, severe anxiety, excruciating mental anguish, loss of possession of the Property, deprivation of the use of the Property, and loss of time.

57. As set forth above, Defendants' unlawful conduct further resulted in the loss of valuable and sentimental personal property, including but not limited to:

- Aluminum metal table frame;
- Antique canister set;
- Antique lamps/parts;
- Antique rocker;
- Antique sewing machine;
- Bedding;
- Concrete bird bath;
- Curtains;
- Desk;
- Family photos;
- Food;
- Rolls of heavy duty vinyl;
- Tools (hammer, pliers, saws, screwdrivers); and
- Wood table tops.

58. Moreover, Defendants' unlawful conduct resulted in damaged/destroyed chair(s) and a portable workbench among other items.

59. As pled above, Defendants' conduct frustrated Plaintiff's effort to sell the Property or otherwise take advantage of loss mitigation offers. As a result, Plaintiff's financial liability on the Loan continues to increase as the interest continues to accrue on the Loan, thus exposing Plaintiff to increased financial liability on the Loan.

60. As of the date of the filing of this lawsuit, Defendants have not made any effort to compensate Plaintiff for her losses.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT
### (AGAINST LAKEVIEW)

61. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

62. The Mortgage is a valid and enforceable contract between Plaintiff and Lakeview.

63. The Mortgage provides:

**5. Occupancy, Preservation, Maintenance and Protection of the Property**

…

Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

64. Lakeview breached the Mortgage by forcibly entering the Property despite the fact that the Property was not vacant nor abandoned.

65. As pled above, Plaintiff was in constant contact with Lakeview about the Property's status and thus Lakeview knew or should have known that the Property was neither vacant nor abandoned at the time Defendants forcibly broke into the Property.

66. As pled above, Plaintiff suffered significant harm as result of Lakeview's breach of contract.

67. Moreover, Plaintiff is entitled to punitive damages stemming from Lakeview's breach of contract as Lakeview's breach constitutes an independent and willful tort accompanied by wantonness or oppression. *See Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.,* 586 F. Supp. 926, 929 (7th Cir. 1984) (finding that where a breach of contract contains allegations sufficient to support both a contract claim and an independent tort, both may stand and punitive damages may be awarded if plaintiff is able to sustain his burden under the tort theory.)

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Find that Lakeview materially breached the contract;

B. Enter judgment in her favor and against Lakeview;

C. Award Plaintiff her actual damages;

D. Award Plaintiff punitive damages; and

E. Award of such other relief as this Court deems just and proper.

### COUNT II - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST LAKEVIEW AND M&T BANK)

68. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

69. To state a claim for intentional infliction of emotional distress, plaintiff must establish that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their

9

conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

70. Defendants' course of conduct in forcibly entering the Property without a contractual or legal basis, damaging the Property and its contents, and stealing Plaintiff's personal property was extreme and outrageous.

71. Defendants knew that the aforementioned conduct would cause severe emotional distress and Plaintiff did in fact suffer severe emotional distress.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Enter judgment in her favor and against Lakeview and M&T Bank;

B. Award Plaintiff her actual damages;

C. Award Plaintiff punitive damages; and

D. Award of such other relief as this Court deems just and proper.

### COUNT III - INTRUSION UPON SECLUSION
### (AGAINST LAKEVIEW AND M&T BANK)

72. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

73. To establish a claim for intrusion upon seclusion, Plaintiff must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd.*, 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

74. Defendants intruded into Plaintiff's seclusion by forcibly entering Plaintiff's Property without consent or valid reason to do so, damaging/destroying Plaintiff's personal property, stealing Plaintiff's personal property, and replacing the locks to the doors of entry and sheds.

75. Defendants' course of conduct would be highly offensive to a reasonable person.

76. As pled above, Plaintiff was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Enter judgment in her favor and against Lakeview and M&T Bank;

B. Award Plaintiff her actual damages;

C. Award Plaintiff punitive damages; and

D. Award such other relief as this Court deems just and proper.

### COUNT IV - TRESPASS TO REAL PROPERTY
### (AGAINST LAKEVIEW AND M&T BANK)

77. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

78. To prevail on a trespass claim "a plaintiff must plead and prove negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).

79. At all times relevant, Plaintiff owned the Property and had a legal right to exclusive possession of the Property.

80. Defendants had actual knowledge that Plaintiff owned and adequately maintained the Property.

81. Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the Property.

82. Without consent or a right to possession, Defendants placed foreign locks on the doors of the Property and sheds, thus depriving Plaintiff of immediate access to the Property and sheds.

83. Defendants' forced entry and trespass upon the Property interfered with Plaintiff's possession, ownership, use, and enjoyment of the Property.

84. Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

85. As pled above, Plaintiff was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Enter judgment in her favor and against Lakeview and M&T Bank;

B. Award Plaintiff her actual damages;

C. Award Plaintiff punitive damages; and

D. Award such other relief as this Court deems just and proper.

**COUNT V - ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (AGAINST LAKEVIEW AND M&T BANK)**

86. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

87. Plaintiff is a "person" as defined by 815 ILCS 505/1(c).

88. Plaintiff is a "consumer" as defined by 815 ILCS 505/1(e).

89. Lakeview is engaged in "commerce" as defined by 815 ILCS 505/1(f).

90. M&T Bank is engaged in "commerce" as defined by 815 ILCS 505/1(f).

91. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false, pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

92. Defendants violated 815 ILCS 505/2 by engaging in the following acts or practices in the course of mortgage servicing and/or property management/preservation services:

   a. Representing to Plaintiff, either expressly or by implication, and with the intent that Plaintiff rely on such representation, that Plaintiff is not entitled to occupy the Property when Plaintiff is, in fact, entitled to occupy the Property;

   b. Taking possession of Plaintiff's Property without legal justification;

   c. Taking control and asserting dominion over the Property without a court order authorizing the same;

   d. Employing self-help and taking possession of the Property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property).

      e.      Unlawfully breaking into Plaintiff's legally-occupied Property;

      f.      Locking Plaintiff out of the Property;

      g.      Draining and turning off the water in Plaintiff's legally-occupied Property;

      h.      Damaging/destroying Plaintiff's personal property;

      i.      Unlawfully removing personal property from Plaintiff's legally-occupied Property;

      j.      Exhibiting dominion and control over the Property, and implying that Plaintiff has lost her ownership rights to the Property;

      k.      Failing to adequately manage, supervise and train their employees/agents in the performance of property inspection and preservation services.

93.    It was unfair and deceptive for Defendants to deem Plaintiff's Property "abandoned" or "vacant" when Defendants had actual notice that Plaintiff's Property was not abandoned or vacant.

94.    It was unfair and deceptive for Defendants to deem Plaintiff's Property "abandoned" or "vacant" when Plaintiff's Property remained conspicuously occupied and maintained.

95.    Defendants' course of conduct was intended to be relied upon by Plaintiff and to buffalo and bully Plaintiff into giving up her possessory rights.

96.    Plaintiff relied upon these acts and was deceived into questioning her legal occupancy rights in the Property, doubting her right to own and use the Property free of invasion, believing a court order was unnecessary, becoming afraid to visit the Property, and losing the peaceful enjoyment and solitude of the Property.

97.    Defendants' conduct offends public policy as it demonstrates an industry-wide practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the

law, expediting the foreclosure process by circumventing the law, and profiting from the expedited sale of real property.

98. Plaintiff had no choice but to submit to Defendants' conduct. Specifically, Plaintiff had no control over (1) the changing of the locks; (2) the theft of her personal property; (3) damage to her personal property; and (4) her inability to enjoy the benefits of ownership of the Property.

99. Defendants' course of conduct is part of a pattern and practice of behavior that Defendants routinely participate in.

100. As pled above, Plaintiff was severely harmed by Defendants' conduct.

101. Defendants' course of conduct further implicates consumer protection concerns generally as consumers reasonably expect:

   a. to be safe and secure in their own property;
   b. their mortgage companies to communicate with them accurately and truthfully regarding the occupancy status of their home or any claims of abandonment/vacancy;
   c. their mortgage companies to refrain from illegal self-help to expedite a foreclosure and bully consumers from their property;
   d. their mortgage companies to follow state and federal law and their own guidelines;
   e. their mortgage companies to adhere to consumer protection laws/statutes as well as investor/mortgage servicing guidelines; and
   f. their mortgage companies will not take illegal action to expedite a foreclosure and bully consumers from their property.

102. An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of Plaintiff, and was designed to take advantage of a vulnerable individual.

103. Punitive damages would serve the interests of Illinois consumers in that it would serve to deter similar misconduct in the future.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Enter judgment in her favor and against Lakeview and M&T Bank;

B. Award Plaintiff her actual damages;

C. Award Plaintiff punitive damages;

D. Award Plaintiff her reasonable attorney's fees and costs; and

E. Award such other relief as this Court deems just and proper.

### COUNT VI - CONVERSION
### (AGAINST LAKEVIEW AND M&T BANK)

104. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

105. Conversion is "the unauthorized deprivation of property from the person entitled to its possession." *Law v. Yanni* (*In re Estate of Yanni*), 400 Ill. Dec. 721, 48 N.E.3d 1161, 1166, 2015 IL App (2d) 150108 (Ill. App. Ct. 2015).

106. Its essence is "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Id*.

107. A cause of action for conversion requires "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." *Id*.

108. Lakeview and M&T Bank, without authority or consent, assumed control, dominion, or ownership over Plaintiff's personal property.

109. Plaintiff has an immediate, absolute, and unconditional right to possession to her personal property.

110. Lakeview and M&T Bank destroyed or remained in unlawful possession of Plaintiff's personal property.

111. Plaintiff demanded the return of her personal property from Lakeview and M&T Bank, or a demand of her personal property would be futile because Lakeview and M&T Bank sold or otherwise disposed of Plaintiff's personal property.

112. Lakeview and M&T Bank have made no attempt to replace or return Plaintiff's personal property or offer to pay the equivalent monetary value.

113. Lakeview and M&T Bank's actions proximately caused the loss of Plaintiff's personal property.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Enter judgment in her favor and against Lakeview and M&T Bank;

B. Award Plaintiff her actual damages;

C. Award Plaintiff punitive damages; and

D. Award such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


DATED: January 31, 2020                                         Respectfully Submitted,

/s/ *Mohammed O. Badwan*

*/s/ Joseph S. Davidson*

Mohammed O. Badwan, Esq.
Joseph S. Davidson, Esq.
Victor Metroff, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
Fax (630) 575-8188
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com
vmetroff@sulaimanlaw.com