| | |
|---|---|
| CYNTHIA SEMBACH, | |
|    Plaintiff, | Case No. 1:20-cv-00752 |
| v. | |
| LAKEVIEW LOAN SERVICING, LLC, M&T BANK, and SAFEGUARD PROPERTIES MANAGEMENT, LLC | Honorable Judge Andrea R. Wood |
|    Defendants. | |

## FIRST AMENDED COMPLAINT

**NOW COMES** Plaintiff, CYNTHIA SEMBACH, by and through her undersigned counsel, complaining of Defendants LAKEVIEW LOAN SERVICING, LLC, M&T BANK, and SAFEGUARD PROPERTIES MANAGEMENT, LLC (collectively "Defendants"), as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for breach of contract, intentional infliction of emotional distress, intrusion upon seclusion, trespass to property, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS 505/1 *et seq*.), conversion, and negligence.

## PARTIES

2.  CYNTHIA SEMBACH ("Plaintiff") is a natural person domiciled in the State of Indiana.

3.  LAKEVIEW LOAN SERVICING, LLC ("Lakeview") is a limited liability company organized and existing under the laws of the State of Delaware. Lakeview is a national

mortgage originator and servicer. Lakeview originates and services thousands of mortgage loans nationwide.

4.      Lakeview maintains its principal place of business at 4425 Ponce De Leon Boulevard, Coral Gables, Florida 33146.

5.      Lakeview's sole member is Bayview MSR Opportunity Corp. ("Bayview MSR").

6.      Bayview MSR is a corporation organized and existing under the laws of the State of Delaware. Bayview MSR is a Delaware corporation.

7.      Lakeview is a citizen of the State of Delaware.[1]

8.      M&T BANK ("M&T Bank") is a corporation organized and existing under the laws of the state of New York.  M&T Bank is a national mortgage servicer. M&T Bank services thousands of mortgage loans nationwide.

9.      M&T Bank maintains its principal place of business at One M&T Plaza, 8th Floor, Buffalo, New York 14203.

10.     SAFEGUARD PROPERTIES MANAGEMENT, LLC ("Safeguard") is a Delaware limited liability company that provides property preservation services and debt collection services to mortgage loan servicers. Safeguard provides property preservation and debt collection services to mortgage loan servicers that service mortgage loans secured by real estate located in Illinois. Safeguard is registered with the Illinois Secretary of State.

11.     Safeguard maintains its principal place of business in Valley View, Ohio.

12.     Safeguard's sole member is Safeguard Holdings, L.P.

---

[1] For diversity jurisdiction purposes, the citizenship of a limited liability company (LLC) is the citizenship of each of its members.  *Camico Mut. Ins. Co. v. Citizens Bank*, 473 F.3d 989, 992 (7th Cir. 2007).

13.     Safeguard Holdings, L.P. is a Delaware limited partnership whose general partner is Safeguard Holdings, G.P., LLC. Safeguard Holdings, G.P., LLC is a Delaware limited liability company whose members are KJH Holdings Co., Inc., and four irrevocable family trusts. KJH Holdings Co., Inc. is an Ohio corporation with its principal place of business in Ohio. The four family trusts are all Ohio trusts with all their trustees, grantors, and beneficiaries being domiciled in and residents of Ohio.

## JURISDICTION AND VENUE

14.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because (1) complete diversity of citizenship exists, and (2) the amount in controversy exceeds the sum or value of $75,000.00.

15.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

16.     On October 7, 2015, Plaintiff executed a mortgage ("Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CMG Mortgage, Inc. d/b/a CMG Financial. *See* attached Exhibit A.

17.     The Mortgage secured the purchase of Plaintiff's property located at 4019 206th Street, Matteson, Illinois 60443 ("Property" or "Plaintiff's Property").

18.     The Mortgage secured a promissory note executed by Plaintiff in the amount of $127,325.00 ("Loan").

19.     In August 2016, Plaintiff unexpectedly lost her job.

20.     In August 2016, Cenlar was the mortgage servicer for the Loan and Mortgage.

3

21.     After losing her job, Plaintiff promptly contacted Cenlar to request retention and non-retention alternatives to foreclosure.

22.     Cenlar informed Plaintiff she was not eligible for retention programs, but agreed to evaluate Plaintiff for non-retention alternatives to foreclosure (e.g. short sale).

23.     Shortly thereafter, Cenlar deemed the Loan in default and began collection activity on the Loan.

24.     On December 28, 2016, MERS executed an Assignment of Mortgage in favor of Lakeview.

25.     In February 2017, after securing employment in the State of Indiana, Plaintiff moved out of the Property and relocated to Fort Wayne, Indiana.

26.     Despite her relocation, Plaintiff left a significant amount of her personal property at the Property.

27.     After relocating to Indiana, Plaintiff made weekly visits to the Property in an effort to maintain it and keep it in good condition.

28.     Specifically, Plaintiff maintained utility services for the Property and kept the Property in great condition to ensure its habitability and marketability.

29.     After relocating, Plaintiff discussed the possibility of a short sale with Cenlar in an effort to satisfy the Loan.

30.     Cenlar advised Plaintiff that it would be open to a short sale and for Plaintiff to contact Cenlar once Plaintiff secured a short sale offer.

31.     On May 18, 2017, Plaintiff received a short sale offer from a third party for $130,000.00.

32. Immediately after receiving the short sale offer, Plaintiff submitted a complete "Short Sale Package" to Cenlar.

33. The "Short-Sale Package" included all information and documents necessary to facilitate the short sale.

34. On June 2, 2017, Lakeview acquired the Loan and delegated the servicing duties for the Loan to M&T Bank.

35. On June 8, 2017, M&T Bank acknowledged receipt of the "Short Sale Package" and corresponding Loss Mitigation Application.

36. On June 13, 2017, M&T Bank sent Plaintiff a correspondence acknowledging that Plaintiff's Loss Mitigation Application was complete.

37. On July 7, 2017, M&T Bank sent Plaintiff a correspondence informing Plaintiff that she was approved for the HUD Pre-Foreclosure Sale program.

38. The approval letter expressly stated: "[i]f the property is vacant or becomes vacant during marketing, you must inform your lender immediately and ensure that the property is protected from freeze damage by 'winterizing' plumbing pipes."

39. Soon thereafter, Plaintiff submitted additional documents necessary to complete the short sale process and M&T Bank acknowledged receipt of the same on August 3, 2017.

40. Shortly thereafter, M&T Bank (acting on behalf of Lakeview) issued a work order(s) to Safeguard to perform specific property preservation services at the Property. *See* attached Exhibit B.

41. At all times relevant, Plaintiff remained in constant contact with M&T Bank.

42. At no time did Plaintiff inform Defendants that the Property was vacant.

43. At all times relevant, the Property was furnished and well maintained.

44.     On August 25, 2017, Plaintiff visited the Property as she did weekly after relocating to Fort Wayne, Indiana.

45.     During this visit, Plaintiff discovered that her realtor's lockbox was missing and that the Property was unlocked.

46.     After further investigation, Plaintiff discovered the locks to the Property's doors and sheds were changed.

47.     Upon entering the Property, Plaintiff discovered that (1) the Property was "winterized;" (2) the windows were open; (3) the air conditioning was turned down to 50 degrees Fahrenheit; (4) the curtains were removed; and (5) the appliances were disconnected.

48.     Moreover, Plaintiff discovered that food was missing from the food cabinets and that some of her antiques and mementos were missing from the Property.

49.     On August 27, 2017, enraged by the unauthorized trespass to the Property, Plaintiff called M&T Bank to inform M&T Bank of her startling discovery.

50.     In response, M&T Bank informed Plaintiff that it unilaterally deemed the Property "abandoned" and that M&T Bank was exercising its right to possession of the Property.

51.     Moreover, M&T Bank repeatedly ignored Plaintiff's grievance regarding her missing personal property and did not offer to compensate Plaintiff for the missing personal property.

52.     On September 1, 2017, M&T Bank informed Plaintiff that Plaintiff's application for the HUD Pre-Foreclosure Sale program was approved.

53.     On or around September 28, 2017, Plaintiff submitted another contract for $130,000.00 to M&T Bank for approval.

54.     On December 12, 2017, M&T Bank informed Plaintiff that it could not approve Plaintiff's short sale as "[t]here are unacceptable terms on the HUD1."

55.     Confused by M&T's vague statement, Plaintiff pressed M&T Bank for more information.

56.     In response, M&T Bank informed Plaintiff that the short sale could not be approved because the Property "needed repairs."

57.     However, M&T Bank refused to inform Plaintiff what repairs were needed.

58.     Plaintiff continued her efforts to get approval for the short sale to no avail.

59.     On February 23, 2018, M&T Bank informed Plaintiff that Plaintiff's Mortgage was forwarded to attorneys for foreclosure proceedings and that all communications moving forward must be sent to the attorneys.

60.     On March 9, 2018, Lakeview initiated mortgage foreclosure proceedings against Plaintiff and the Property.

61.     At all times relevant, Plaintiff was the legal owner of the Property.

62.     At all times relevant, the Property was furnished, well-maintained (exterior in good condition, grass cut, no city code violations, etc.), and contained Plaintiff's personal property.

63.     At all times relevant, Defendants had actual knowledge that Plaintiff was in the process of selling the home.

64.     At all times relevant, Defendants did not have authority to enter the Property.

65.     At all times relevant, Defendants did not notify Plaintiff that they would be sending representatives to the Property to determine if the subject property was vacant.

66.     At all times relevant, Defendants did not have a legal right to enter the Property.

67. At all times relevant, Lakeview had a consensual agency relationship with M&T Bank whereby Lakeview (as the principal) had the right to control and direct the activities of M&T Bank, and M&T Bank had the authority to act on behalf of Lakeview. Lakeview, as the principal of M&T Bank, is liable for the acts of M&T Bank and M&T Bank's agents.

68. At all times relevant, M&T Bank had a consensual agency relationship with Safeguard whereby M&T Bank (as the principal) had the right to control and direct the activities of Safeguard, and Safeguard had the authority to act on behalf of M&T Bank. M&T Bank, as the principal of Safeguard, is liable for the acts of Safeguard and its agents.

69. Plaintiff first discovered that it was Safeguard, and not M&T Bank, that committed the unlawful entry into the Property on April 22, 2020, upon the filing of Lakeview and M&T Bank's Motion to Dismiss. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (Pursuant to the discovery rule, a cause of action accrues when the plaintiff discovers that "he has been injured and *who caused* the injury.")

70. Specifically, the Motion to Dismiss attached work orders to Safeguard that revealed, for the very first time, that it was Safeguard (on behalf of M&T Bank) that committed the conduct that gives rise to Plaintiff's claims. *See* Dkt. 22-2 (Exhibit B) and 22-3 (Exhibit C), *see also* attached Exhibit B.

## **DAMAGES**

71. As result of Defendants' unlawful conduct, Plaintiff suffered significant damages, including but not limited to, endless stress, severe anxiety, excruciating mental anguish, loss of possession of the Property, deprivation of the use of the Property, and loss of time.

72. As set forth above, Defendants' unlawful conduct further resulted in the loss of valuable and sentimental personal property, including but not limited to:

- Aluminum metal table frame;

- Antique canister set;

- Antique lamps/parts;

- Antique rocker;

- Antique sewing machine;

- Bedding;

- Concrete bird bath;

- Curtains;

- Desk;

- Family photos;

- Food;

- Rolls of heavy duty vinyl;

- Tools (hammer, pliers, saws, screwdrivers); and

- Wood table tops.

73. Moreover, Defendants' unlawful conduct resulted in damaged/destroyed chair(s) and a portable workbench among other items.

74. As pled above, Defendants' conduct frustrated Plaintiff's effort to sell the Property or otherwise take advantage of loss mitigation offers. As a result, Plaintiff's financial liability on the Loan continued to accrue, exposing Plaintiff to an increased risk for a personal deficiency after the Property is sold.

75. As of the date of the filing of this lawsuit, Defendants have not made any effort to compensate Plaintiff for her losses.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT
### (AGAINST LAKEVIEW)

76.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

77.     The Mortgage is a valid and enforceable contract between Plaintiff and Lakeview. *See* attached Exhibit A.

78.     The Mortgage, in pertinent part, provides:

**5. Occupancy, Preservation, Maintenance and Protection of the Property**

**...**

Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take *reasonable action* to protect and preserve such *vacant or abandoned* Property. *Id.* (emphasis added).

79.     Lakeview breached the Mortgage by forcibly entering the Property (through its agents M&T Bank and Safeguard), changing the locks, and absconding with Plaintiff's personal property despite the fact that the Property was neither vacant nor abandoned.

80.     Such conduct was not reasonable to protect and preserve the Property.

81.     Specifically, at the time of the forcible entry, the Property was furnished, well-maintained (exterior in good condition, grass cut, no city code violations, etc.), and contained Plaintiff's personal property. Accordingly, there was no indication that the Property was vacant, abandoned, or in need of protection or preservation. *See* attached Exhibit B.

82.     Moreover, forcibly entering the Property was not reasonable, especially in light of the fact that Plaintiff was in constant contact with M&T Bank regarding the short sale. In other words, Lakeview could have easily requested that Plaintiff provide it access to the Property for

inspection and/or preservation. Instead, Lakeview (through its agents M&T Bank and Safeguard) forcibly entered the Property and changed the locks without any notice or authorization from Plaintiff. Such action was unreasonable by any objective standard.

83.     As pled above, Plaintiff was in constant contact with M&T Bank (Lakeview's agent) about the Property's status and thus Lakeview knew or should have known that the Property was neither vacant nor abandoned at the time Defendants forcibly broke into the Property.

84.     Moreover, Lakeview breached the contract by violating governing Illinois law. Specifically, Paragraph 14 provides that the Mortgage "shall be governed by Federal law and the *law of the jurisdiction in which the Property is located.*" *See* attached Exhibit A, ¶14.

85.     Given that the Property is located in Illinois, Illinois law governs the Mortgage.

86.      Lakeview's forcible entry into the Property violated several Illinois laws.

87.     First, Lakeview's conduct violated the Illinois Mortgage Foreclosure Law ("IMFL"). Specifically, the IMFL provides that "prior to the entry of a judgment of foreclosure…..in the case of residential real estate, the mortgagor shall be entitled to possession of the real estate except if 'the court decides to give the mortgagee possession for good cause.'" *Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 826 (N.D. Ill. 2013).

88.     Moreover, the IMFL provides that "any person….who harasses or intimidates such occupants [of mortgaged real estate], with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment….shall be guilty of a class B misdemeanor." *Id.* citing 735 ILCS 5/15-1104. Accordingly, not only was Lakeview's conduct a breach of contract but also a *crime* under Illinois law.

89.     Secondly, Lakeview's forcible entry into the Property constitutes an unlawful trespass under Illinois law. "Under Illinois law, a trespass is an invasion of the interest in the

exclusive possession of land, as by entry upon it" *Fannie Mae v. Obradovich,* 2020 U.S. Dist. LEXIS 93001, at *16-17 (N.D. Ill. 2020).

90.     Without consent or a right to possession, Lakeview (through its agents) invaded Plaintiff's interests in the exclusive possession of the Property by: (1) forcibly entering and assuming dominion and control of the Property; and (2) placing foreign locks on the doors of the Property and sheds, depriving Plaintiff of access to the Property and sheds.

91.     Upon information and belief, Lakeview approved and ratified the forcible entry into the Property. As the principal of M&T Bank and Safeguard, Lakeview is liable for trespass because "a person who aids, abets, assists, or directs the commission of a trespass by another is therefore liable for that trespass." *Id*. at *17.

92.     Lakeview's forced entry and unlawful trespass upon the Property (through its agents) interfered with Plaintiff's possession, ownership, use, and enjoyment of the Property.

93.     Accordingly, Lakeview breached the contract by engaging in conduct that violates Illinois law.

94.     Lastly, Lakeview's conduct (through its agents) as set forth above breached the implied covenant of good faith and fair dealing. Specifically, Lakeview's self-help conduct (through its agents) in taking possession of the Property without Plaintiff's authorization and frustrating Plaintiff's ability to complete a short sale was done in bad faith and demonstrates Lakeview's failure to exercise its contractual discretion reasonably and with proper motive.

95.     As pled above, Plaintiff suffered significant harm as result of Lakeview's breach of contract and breach of the implied covenant of good faith and fair dealing.

96.     Moreover, Plaintiff is entitled to punitive damages stemming from Lakeview's breach of contract as Lakeview's breach constitutes an independent and willful tort(s)

accompanied by wantonness or oppression. *See Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.,* 586 F. Supp. 926, 929 (7th Cir. 1984) (finding that where a breach of contract contains allegations sufficient to support both a contract claim and an independent tort, both may stand and punitive damages may be awarded if plaintiff is able to sustain his burden under the tort theory.)

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A. Find that Lakeview materially breached the contract;

B. Enter judgment in her favor and against Lakeview;

C. Award Plaintiff her actual damages as determined by a jury;

D. Award Plaintiff punitive damages as determined by a jury; and

E. Award of such other relief as this Court deems just and proper.

### COUNT II - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST SAFEGUARD)

97. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

98. To state a claim for intentional infliction of emotional distress, plaintiff must establish that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

99.     Safeguard's course of conduct in forcibly entering the Property without a contractual or legal basis, changing the locks, damaging personal property in the Property, and stealing Plaintiff's personal property was extreme and outrageous.

100.     Safeguard knew that the aforementioned conduct would cause severe emotional distress and Plaintiff did in fact suffer severe emotional distress.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A.      Enter judgment in her favor and against Safeguard;

B.      Award Plaintiff her actual damages as determined by a jury;

C.      Award Plaintiff punitive damages as determined by a jury; and

D.      Award of such other relief as this Court deems just and proper.

### COUNT III - INTRUSION UPON SECLUSION
### (AGAINST ALL DEFENDANTS)

101.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

102.     To establish a claim for intrusion upon seclusion, Plaintiff must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd*., 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

103.     Safeguard intruded into Plaintiff's seclusion by forcibly entering Plaintiff's Property without consent or valid reason to do so, damaging/destroying Plaintiff's personal

property, stealing Plaintiff's personal property, and replacing the locks to the doors of entry and sheds.

104.    Safeguard's course of conduct would be highly offensive to a reasonable person.

105.    As pled above, Plaintiff was severely harmed by Safeguard's conduct.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A.    Enter judgment in her favor and against Safeguard;

B.    Award Plaintiff her actual damages as determined by a jury;

C.    Award Plaintiff punitive damages as determined by a jury; and

D.    Award such other relief as this Court deems just and proper.

### COUNT IV
### COUNT IV - TRESPASS TO REAL PROPERTY
### (AGAINST ALL DEFENDANTS)

106.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

107.    To prevail on a trespass claim "a plaintiff must plead and prove negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).

108.    At all times relevant, Plaintiff owned the Property and had a legal right to exclusive possession of the Property.

109.    Defendants had actual knowledge that Plaintiff owned and adequately maintained the Property.

110.  Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the Property.

111.  Without consent or a right to possession, Defendants placed foreign locks on the doors of the Property and sheds, thus depriving Plaintiff of immediate access to the Property and sheds.

112.  Defendants' forced entry and trespass upon the Property interfered with Plaintiff's possession, ownership, use, and enjoyment of the Property.

113.  Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

114.  As pled above, Plaintiff was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

A.  Enter judgment in her favor and against Defendants;

B.  Award Plaintiff her actual damages as determined by a jury;

C.  Award Plaintiff punitive damages as determined by a jury; and

D.  Award such other relief as this Court deems just and proper.

## COUNT V
### COUNT V - ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (AGAINST ALL DEFENDANTS)

115.  All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

116.  Plaintiff is a "person" as defined by 815 ILCS 505/1(c).

117.  Plaintiff is a "consumer" as defined by 815 ILCS 505/1(e).

118.   Lakeview is engaged in "commerce" as defined by 815 ILCS 505/1(f).

119.   M&T Bank is engaged in "commerce" as defined by 815 ILCS 505/1(f).

120.   Safeguard is engaged in "commerce" as defined by 815 ILCS 505/1(f).

121.   Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false, pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby.  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

122.   Defendants violated ICFA (815 ILCS 505/2) by engaging in the following conduct in the course of mortgage servicing and/or property management/preservation services:

a.   Representing to Plaintiff, either expressly or by implication, and with the intent that Plaintiff rely on such representation, that Plaintiff is not entitled to occupy or use the Property when Plaintiff is, in fact, entitled to occupy and use the Property;

b.   Taking possession of Plaintiff's Property without legal justification;

c.   Taking control and asserting dominion over the Property without a court order authorizing the same;

d.   Employing self-help and taking possession of the Property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property);

e.   Unlawfully breaking into Plaintiff's legally-occupied Property;

f.  Changing the locks of the Property;

g.  Draining and turning off the water in Plaintiff's legally-occupied Property;

h.  Damaging/destroying Plaintiff's personal property;

i.  Unlawfully removing personal property from Plaintiff's legally-occupied Property;

j.  Exhibiting dominion and control over the Property, and implying that Plaintiff has lost her ownership rights to the Property;

k.  Failing to adequately manage, supervise and train their employees/agents in the performance of property inspection and preservation services;

l.  Committing unlawful trespass under the false pretext that such trespass was authorized by the Mortgage;

123.    It was unfair and deceptive for Defendants to deem Plaintiff's Property "abandoned" or "vacant" when Defendants had actual knowledge that Plaintiff's Property was neither abandoned nor vacant and that Plaintiff was in the process of obtaining a buyer for the Property.

124.    It was unfair and deceptive for Defendants to unilaterally deem Plaintiff's Property "abandoned" or "vacant" when Plaintiff's Property remained conspicuously occupied and well-maintained.

125.    Defendants' course of conduct was intended to be relied upon by Plaintiff and to buffalo and bully Plaintiff into giving up her possessory rights.

126.    Plaintiff relied upon these acts and was deceived into questioning the legal status of the ownership of the Property, doubting her right to own and use the Property free of invasion, believing a court order was unnecessary, becoming afraid to visit the Property, and losing the peaceful enjoyment and solitude of the Property.

127.    Defendants' conduct offends public policy as it demonstrates a widespread practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law,

circumventing the legal foreclosure process, and profiting from the expedited sale of real property. *See Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013) ("A practice that attempts to circumvent the foreclosure process established by Illinois law is against the public policy of Illinois).

128.     Moreover, Defendants' conduct in bullying Plaintiff out of her Property in an effort to induce Plaintiff to abandon the Property in order to obtain a finding of abandonment is a crime under Illinois law. *See* 735 ILCS 5/15-1104 ("any person….who harasses or intimidates such occupants [of mortgaged real estate], with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment….shall be guilty of a class B misdemeanor.")

129.     The commission of such crime clearly violates public policy.

130.     Plaintiff had no choice but to submit to Defendants' conduct. Specifically, Plaintiff had no control over (1) the changing of the locks; (2) the theft of her personal property; (3) damage to her personal property; and (4) her inability to enjoy the benefits of ownership of the Property.

131.     Defendants' course of conduct is part of a pattern and practice of behavior that Defendants routinely engage in.

132.     As pled above, Plaintiff was severely harmed by Defendants' conduct.

133.     Defendants' course of conduct further implicates consumer protection concerns generally as consumers reasonably expect:

      a.     to be safe and secure in their own property;

      b.     their mortgage companies to communicate with them accurately and truthfully regarding the occupancy status of their home or any claims of abandonment/vacancy;

c. their mortgage companies to refrain from illegal self-help to expedite a foreclosure and bully consumers from their property;

d. their mortgage companies to follow state and federal law and their own guidelines;

e. their mortgage companies to adhere to consumer protection laws/statutes as well as investor/mortgage servicing guidelines; and

f. their mortgage companies will not take illegal action to expedite a foreclosure and bully consumers from their property.

134. An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of Plaintiff, and was designed to take advantage of a vulnerable individual.

135. Punitive damages would serve the interests of Illinois consumers in that it would serve to deter similar misconduct in the future.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

a. Enter judgment in her favor and against Lakeview, M&T Bank, and Safeguard;

b. Award Plaintiff her actual damages as determined by a jury;

c. Award Plaintiff punitive damages as determined by a jury;

d. Award Plaintiff  her reasonable attorney's fees and costs; and

d. Award Plaintiff any further relief this Honorable Court deems equitable and just.

### COUNT VI - CONVERSION
### (AGAINST SAFEGUARD)

136. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

137. Conversion in Illinois is "the unauthorized deprivation of property from the person entitled to its possession." *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294 (1994).

138. Conversion's essence is "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 269 (1987).

139. A cause of action for conversion requires "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." *Id.*

140. Safeguard, without authority or consent, assumed control, dominion, or ownership over Plaintiff's personal property as itemized above.

141. Plaintiff had an immediate, absolute, and unconditional right to possession to her personal property.

142. Safeguard destroyed or remained in unlawful possession of Plaintiff's personal property.

143. Plaintiff demanded the return of her personal property from M&T Bank (Safeguard's principal) to no avail. Moreover, any additional demands for Plaintiff's personal property would be futile because Safeguard sold or otherwise disposed of Plaintiff's personal property.

144. M&T Bank and Safeguard have made no attempt to replace or return Plaintiff's personal property or offer to pay the equivalent monetary value.

**WHEREFORE**, Plaintiff, CYNTHIA SEMBACH, respectfully requests that this Honorable Court:

a.      Enter judgment in her favor and against Safeguard;

b.      Award Plaintiff her actual damages as determined by a jury;

c.      Award Plaintiff punitive damages as determined by a jury; and

d.      Award such other relief as this Court deems just and proper.

## COUNT VII - NEGLIGENCE
### (AGAINST SAFEGUARD)

145.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

146.    Safeguard voluntarily exercised control and dominion over the Property and Plaintiff's personal property. Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the person affected by the undertaking.

147.    Safeguard took affirmative steps to control access to and possession of the Property by changing the locks, restricting access for a period of time, and exercising dominion and control over the personal property therein.

148.    Safeguard breached its duty to take reasonable steps to protect the Property and the personal property contained therein, comply with the law, or follow the practices and procedures within its own manuals and work order guidelines.

149.    Safeguard breached its duty by (a) failing to protect or secure the Property and its contents; (b) violating the law; (c) failing to allow its own formalized procedures, and (d) failing to use reasonable care when "securing" the subject property.

150.     Safeguard breached its duty to act prudently by absconding with Plaintiff's personal property and by failing to prevent any property loss after voluntarily exercising control and dominion over the Property and its contents.

151.     It was reasonably foreseeable that unilaterally taking control and failing to prevent the loss of Plaintiff's personal property would result in harm to Plaintiff.

152.     It was reasonably foreseeable that taking dominion and control of the Property and actively restricting Plaintiff's access to the Property would damage Plaintiff.

153.     Safeguard was aware that its actions would likely result in injury to Plaintiff, but willfully ignored its duty of reasonable care. Safeguard acted with such gross negligence as to indicate willful and wanton disregard of Plaintiff's property rights.

154.     Safeguard's actions proximately caused damages to Plaintiff in the form of loss of personal property and other damages as described above.

155.     As pled above, Plaintiff was severely harmed by Safeguard's conduct.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: June 10, 2020                                  Respectfully Submitted,

                                                    /s/ *Mohammed O. Badwan*

                                                    Mohammed O. Badwan, Esq.
                                                    Joseph S. Davidson, Esq.
                                                    Victor Metroff, Esq.
                                                    *Counsel for Plaintiff*
                                                    Sulaiman Law Group, Ltd.
                                                    2500 S. Highland Ave., Ste. 200
                                                    Lombard, IL 60148
                                                    Phone (630) 575-8180
                                                    Fax (630) 575-8188
                                                    mbadwan@sulaimanlaw.com
                                                    jdavidson@sulaimanlaw.com
                                                    vmetroff@sulaimanlaw.com