IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SEMBACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-00752 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| LAKEVIEW LOAN SERVICING, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

After Plaintiff Cynthia Sembach lost her job in August 2016, she defaulted on the loan she had taken out to purchase her Matteson, Illinois home (the "Property") the previous year. Sembach eventually obtained a new job but it required her to move to Indiana. Sembach claims that she nonetheless regularly visited the Property to ensure it remained in good condition while she attempted to pay off the loan through a short sale. Sembach alleges that during one of her visits, she saw that someone had entered the Property without authorization and made several alterations. In addition, some of the personal property that Sembach kept at the Property was missing. As a result of the alleged unauthorized entry, Sembach has brought the present action asserting seven state-law claims against Defendants Lakeview Loan Servicing, LLC ("Lakeview"), M&T Bank, and Safeguard Properties Management, LLC ("Safeguard"). Lakeview and M&T Bank have jointly moved to dismiss Sembach's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 37.) In addition to adopting Lakeview and M&T Bank's arguments for dismissal, Safeguard has also separately filed a Rule 12(b)(6) motion to dismiss. (Dkt. No. 46.) For the reasons that follow, Defendants' motions to dismiss are granted in part and denied in part.

**BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the amended complaint as true and views those facts in the light most favorable to Sembach as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Accordingly, the following facts are taken from Sembach's amended complaint.

In October 2015, Sembach executed a mortgage and promissory note securing a loan for the purchase of the Property. (Am. Compl. ¶¶ 16–18, Dkt. No. 31.) When Sembach lost her job in August 2016, she contacted the mortgage servicer to request retention and non-retention alternatives to foreclosure. (*Id.* ¶¶ 19–21.) The servicer informed Sembach that she was not eligible for retention programs but agreed to evaluate her for a short sale, a non-retention foreclosure alternative. (*Id.* ¶ 22.) Shortly thereafter, the servicer deemed Sembach's loan in default and began collection activity. (*Id.* ¶ 23.)

Sembach obtained a new job that required her to move to Fort Wayne, Indiana, in February 2017. (*Id.* ¶ 25.) Despite moving out of the Property, she kept it furnished and left a significant amount of her personal property there. (*Id.* ¶¶ 26, 43.) Moreover, Sembach made weekly visits back to the Property to keep it in good condition and ensure its habitability and marketability. (*Id.* ¶¶ 27–28.) During that time, Sembach and her mortgage servicer continued to discuss the possibility of a short sale as a way of satisfying the loan underlying the Property. (*Id.* ¶¶ 29–30.) On May 18, 2017, Sembach received a $130,000 short sale offer from a third party. (*Id.* ¶ 31.) Upon receiving the offer, Sembach submitted a complete "Short Sale Package" to her servicer, which included all information and documents necessary to consummate the short sale. (*Id.* ¶¶ 32–33.)

By June 2, 2017, Defendant Lakeview had acquired the loan on the Property and delegated servicing duties to Defendant M&T Bank. (*Id.* ¶¶ 24, 34.) M&T Bank received Sembach's "Short Sale Package" and, on July 7, 2017, informed her that she was approved for a pre-foreclosure sale program. (*Id.* ¶ 37.) In the approval letter, M&T Bank stated that, "if the property is vacant or becomes vacant during marketing, you must inform your lender immediately and ensure that the property is protected from freeze damage by 'winterizing' plumbing pipes." (*Id.* ¶ 38.) Throughout July and August, Sembach continued working with M&T Bank on completing the short sale process and was in frequent contact with the servicer. (*Id.* ¶¶ 39, 41–43.)

In early August 2017, M&T Bank, on behalf of Lakeview, issued a work order to Defendant Safeguard to perform certain property preservation services at the Property. (*Id.* ¶ 40.) Thus, when Sembach made one of her weekly visits to the Property on August 25, 2017, she discovered that the Property was unlocked and her realtor's lockbox was missing. (*Id.* ¶¶ 45–46.) Upon further investigation, Sembach discovered that the Property had been winterized, its locks had been changed, its windows were open, and the air conditioning had been turned down to 50 degrees. (*Id.* ¶¶ 46–47.) In addition, she observed that her curtains had been removed, her appliances had been disconnected, and that food and some of the personal property she kept at the Property were missing or damaged. (*Id.* ¶¶ 47–48, 73.)

When Sembach contacted M&T Bank to inform it of what she had discovered during her visit, M&T Bank told her that it had determined that the Property was "abandoned," thereby allowing M&T Bank to exercise its right to possession of the Property. (*Id.* ¶¶ 49–50.) M&T Bank ignored Sembach's complaints about her missing personal property and made no offer to compensate her for the losses. (*Id.* ¶ 51.) Ultimately, M&T Bank refused to approve Sembach's proposed short sale, claiming that the Property "needed repairs" without providing more specifics.

(*Id.* ¶¶ 54–57.) Despite Sembach's continued attempts to obtain approval of the short sale, Lakeview initiated foreclosure proceedings on the Property on March 9, 2018. (*Id.* ¶¶ 58–60.) According to Sembach, Defendants' conduct caused her stress, anxiety, mental anguish, and loss of valuable and sentimental personal property. (*Id.* ¶ 71.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Sembach's seven-count amended complaint asserts claims for breach of contract (Count I), intentional infliction of emotional distress ("IIED") (Count II), intrusion upon seclusion (Count III), trespass to real property (Count IV), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 (Count V), conversion (Count VI), and negligence (Count VII). Together, Defendants' motions seek the dismissal of all claims. In her response to the motions to dismiss, Sembach concedes that her breach of contract claim (Count I) is barred by the doctrine of *res judicata* and withdraws it. That claim is therefore dismissed with prejudice. The Court addresses each of the remaining claims in turn.

I.    IIED

Sembach asserts her IIED claim in Count II against only Safeguard. She alleges that Safeguard's conduct in entering the Property and making alterations without authorization and by removing Sembach's personal property was extreme and outrageous. Safeguard, however, contends that the statute of limitations has run on Sembach's IIED claim.

Normally, a plaintiff's complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.* In Illinois, the applicable statute of limitations for an IIED claim is two years. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003) (citing 735 ILCS 5/13-202). Safeguard asserts that Sembach's allegations plainly reveal that she first discovered the alleged unauthorized entry underlying her IIED claim on August 25, 2017 but did not file the present lawsuit until after the limitations period had elapsed on August 25, 2019. In response, Sembach points out that she also has alleged that she did not discover Safeguard's involvement in the unauthorized entry until April 22, 2020, when Lakeview and M&T Bank's previously filed motion to dismiss disclosed information implicating Safeguard in the unauthorized entry. (Am. Compl. ¶ 69.) She contends that her IIED claim against Safeguard did not accrue until that date under the discovery rule.

In arguing that her IIED claim did not accrue until April 22, 2020, Sembach cites the federal version of the discovery rule, which "starts the statute of limitations running only when the plaintiff learns that [she's] been injured, and by whom." *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010). However, because Sembach's IIED claim is a state-law claim heard

5

pursuant to this Court's diversity jurisdiction, the Court must apply Illinois substantive law. *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("When reviewing a Rule 12(b)(6) dismissal of state law claims based on a statute of limitations, we apply state law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel." (internal quotation marks omitted)). Illinois also recognizes the discovery rule, "but its formulation is somewhat different than the federal discovery rule." *Richardson v. City of Chicago*, 314 F. Supp. 3d 999, 1009 (N.D. Ill. 2018). Under Illinois law, the discovery rule "postpone[s] the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should know that [she] has been injured and that [her] injury was wrongfully caused." *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 898 (7th Cir. 1995). "[U]nlike under the federal rule, the plaintiff need not be able to identify *who* caused . . . her injury before the statute of limitations commences." *Richardson*, 314 F. Supp. 3d at 1009. Rather, in Illinois, "the discovery referred to is merely discovery that the plaintiff has been wrongfully injured." *Fid. Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006). "Once a plaintiff knows [she] is injured, the discovery rule does not delay accrual until [she] knows who injured [her]." *Tabet v. Mill Run Tours, Inc.*, No. 10-CV-4606, 2013 WL 1103695, at *5 (N.D. Ill. Mar. 15, 2013).

Applying Illinois's discovery rule here, Sembach cannot save her IIED claim by claiming that she did not know Safeguard was involved in the unauthorized entry until after the limitations period had run.[1] There is no question that Sembach knew she was wrongfully injured on August

---

[1] Safeguard failed to recognize that Sembach was improperly citing the federal discovery rule and instead relied on materials outside the pleadings to argue that Sembach should have known about Safeguard's involvement on the day she discovered the unauthorized entry. Consideration of Safeguard's additional materials would be inappropriate at the motion to dismiss stage. And in any case, once Illinois's discovery

25, 2017, when she visited the Property and saw that someone had entered it without authorization. Thus, the statute of limitations began running on that date, and Sembach had "the limitations period to discover [who injured her], draft [her] complaint, and file suit." *Fid. Nat'l Title Ins. Co.*, 436 F.3d at 839. But by the time Sembach knew of Safeguard's involvement, the limitations period had run on her IIED claim. For that reason, the IIED claim is dismissed with prejudice.

## II. Intrusion upon Seclusion

In Count III, Sembach alleges that Defendants intruded into her seclusion by forcibly entering the Property without consent or a valid reason to do so, altering the Property without permission and damaging or destroying the personal property inside. In Illinois, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or [her] private affairs or concerns, is subject to liability to the other for invasion of [her] privacy, if the intrusion would be highly offensive to a reasonable person." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 424 (Ill. 2012). The elements of an intrusion upon seclusion claim are: "(1) an unauthorized intrusion or prying into a plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matters upon which the intrusion occurred were private; and (4) the intrusion caused anguish and suffering." *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (internal quotation marks omitted).

Defendants argue that Sembach's intrusion upon seclusion claim must be dismissed because her allegations show that Defendants' purported intrusion was authorized by a provision in the mortgage. Specifically, the mortgage provides: "Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to

---

rule is properly applied, it is readily apparent from the amended complaint's allegations that the IIED claim is time-barred.

protect and preserve such vacant or abandoned Property." (Am. Compl. ¶ 78.) Because Sembach expressly alleges that she had defaulted on her loan, Defendants contend that the mortgage authorized them to inspect the Property and take reasonable actions to protect and preserve it.

But while the mortgage allowed Defendants to inspect the Property on account of Sembach defaulting on her loan, Defendants were able to take actions to protect and preserve the Property only if it was vacant or abandoned and only insofar as those actions were reasonable. Here, Sembach denies that the Property was vacant or abandoned, as she alleges that she kept the Property furnished and visited it regularly to ensure it remained in good condition. Moreover, whether Defendants' actions were reasonable is a question of fact not amenable to resolution at the motion to dismiss stage. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Obradovich*, No. 14-cv-04664, 2016 WL 1213920, at *3 (N.D. Ill. Mar. 29, 2016) ("[T]he question of whether the Counter-Defendants' right to take steps to protect the property was triggered by a breach or abandonment by the [plaintiffs], as well as the question of whether the steps they took were the reasonable or appropriate actions permitted by the contract, cannot be determined at the pleading stage.").

In addition, Defendants claim that Sembach's intrusion upon seclusion claim must fail because she was no longer residing at the Property and was not present at the time of the unauthorized entry. Yet, "the nature of [the intrusion upon seclusion] tort depends upon some type of highly offensive prying into the physical boundaries or affairs of another person." *Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989). It is therefore enough that Sembach has pleaded that she owned the Property and kept her personal effects there to show an intrusion into her physical boundaries or affairs. In short, the Court cannot conclude at this early stage that Defendants did not commit an unauthorized intrusion or prying into Sembach's private domain. And because Defendants do not challenge the sufficiency of Sembach's allegations as to

any other element of her intrusion upon seclusion claim, the Court denies their request to dismiss that claim.

### III. Trespass to Real Property

Count IV of Sembach's amended complaint asserts a claim for trespass to real property. To state a trespass claim under Illinois law, a plaintiff must plead "negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013). Defendants argue that the trespass claim must be dismissed because their entry onto the Property was authorized by the mortgage provision allowing the lender to "inspect the Property if . . . the loan is in default" and take reasonable actions to protect and preserve the Property if it was abandoned or vacant. (Am. Compl. ¶ 78.)

As discussed above, Sembach has conceded that she defaulted on her loan prior to the unauthorized entry. Thus, there is no question that Defendants were permitted at least to enter the Property for the purpose of inspection. But Sembach alleges that Defendants did more than merely inspect the Property—she claims they materially altered it and removed personal property from inside it. Just as with the intrusion upon seclusion claim, there remain questions of fact as to whether the Property was vacant or abandoned and whether Defendants' actions were reasonable, and those questions preclude dismissal at the pleadings stage. *See, e.g.*, *Griffin v. Safeguard Props. Mgmt., LLC*, No. 18 C 5755, 2020 WL 6118572, at *5 (N.D. Ill. Oct. 16, 2020) (denying summary judgment on trespass claim where mortgage provision authorized the defendant, upon default, to "do and pay for whatever is reasonable and appropriate to protect its interest" in the property because there remained a question of material fact as to whether the defendant's actions were reasonable); *Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 WL 3260449, at *2 (N.D.

Ill. Aug. 8, 2012) (denying motion to dismiss trespass claim because even though the plaintiff's mortgage allowed the defendant to take "reasonable or appropriate" action to protect its interest in the plaintiff's property upon default, "whether their actions were reasonable[] is a fact issue that cannot be determined on a motion to dismiss"). For that reason, Defendants' motion to dismiss the trespass to real property claim is denied.

## IV. ICFA

According to Sembach, Defendants' allegedly unfair course of conduct following Lakeview's acquisition of the loan violated the ICFA, 815 ILCS 505/2 (Count V). The ICFA's purpose is "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The elements of an ICFA claim include: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

While the amended complaint alleges that Defendants' conduct was both unfair and deceptive, in her opposition to the motions to dismiss, Sembach clarifies that her ICFA claim hinges on alleged unfair conduct.[2] But Defendants dispute that Sembach has pleaded an unfair practice and seek dismissal of her ICFA claim on that basis. In determining whether a practice is unfair under the ICFA, Illinois courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes

---

[2] While an ICFA claim predicated on allegations of deceptive conduct is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019), "[a]n ICFA claim for unfairness need not meet the pleading standards of Rule 9(b)," *Obradovich*, 2016 WL 1213920, at *3.

substantial injury to consumers." *Robinson*, 775 N.E.2d at 961. "A plaintiff need not satisfy all three factors; '[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (quoting *Robinson*, 775 N.E.2d at 961).

Sembach contends that Defendants' conduct offended public policy because it was intended to drive her out of her home so that Defendants could take possession without having to go through the foreclosure process mandated by the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 *et seq.* Courts have routinely found that "[a] practice that attempts to circumvent the foreclosure process established by Illinois law is against the public policy of Illinois." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013); *see also Obradovich*, 2016 WL 1213920, at *3 ("Where a statutory framework provides a consumer with a right to notice before he is deprived of possession of his property, an allegation that a defendant circumvented the statutory procedure and deprived that consumer of his property without the required notice sufficiently alleges an offense to public policy, oppressiveness, and injury for purposes of an ICFA unfairness claim."). Thus, allegations that a defendant has entered a mortgaged property without authorization, changed locks on the property, and removed personal property from the mortgaged property are sufficient to plead an ICFA unfairness claim. *See, e.g.*, *Flippin*, 2012 WL 3260449, at *3 ("Plaintiffs' allegations that defendants locked her out of her house and took her property without a legal or factual basis for doing so adequately state an ICFA claim."); *Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 756 (N.D. Ill. 2011) ("[The plaintiff] alleges . . . that Defendants broke into and ransacked his home and padlocked his door, thus ***dispossessing*** him of the property. Accepting these allegations as

true, Defendants' actions offended public policy . . . ."). Defendants' motion to dismiss the ICFA claim is denied.

V. **Conversion**

In Count VI, Sembach asserts a claim against Safeguard for conversion of the personal property she kept inside the Property. "[A] conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). A plaintiff may state a conversion claim in Illinois by alleging: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97 (Ill. App. Ct. 1990).

Safeguard argues that Sembach has failed to state a claim for conversion because she made no pre-suit demand for possession of the allegedly converted personal property. Despite the amended complaint's express allegation that Sembach "demanded the return of her personal property from M&T Bank (Safeguard's principal) to no avail" (Am. Compl. ¶ 143), Safeguard contends that Sembach needed to direct a similar demand to Safeguard itself. In response, Sembach emphasizes that she also alleges that making a demand of Safeguard would have been futile "because Safeguard sold or otherwise disposed of" her personal property. (*Id.*) Indeed, Illinois courts frequently excuse pre-suit demand as futile where the defendant has sold or otherwise disposed of the property at issue. *See, e.g.*, *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 477 N.E.2d 1326, 1334 (Ill. App. Ct. 1985). Yet Safeguard argues that Sembach's allegation that Safeguard no longer possessed the personal property is insufficient and, citing *McKenney-Becker v. Safeguard Properties, LLC*, No. 14-cv-04514, 2015 WL 170520, at *12 (N.D. Ill. Jan. 13,

2015), asserts that Sembach must allege that Safeguard made some communication to her indicating that it had sold or disposed of her personal property. But in *McKenney*, the plaintiffs made no allegation whatsoever concerning any pre-suit demand and therefore requested leave to replead to add an allegation that demand would be futile because the defendants had informed the plaintiffs that their personal property was not recoverable. Thus, *McKenney* simply recognized that the plaintiffs' proposed remedy was sufficient to plead futility. The case did not suggest that alleging a direct communication from the defendant was necessary to plead futility. Here, Sembach has alleged that Safeguard sold or disposed of her personal property, and accepting that allegation as true, as the Court must, it is sufficient to plead that pre-suit demand would have been futile. Accordingly, Safeguard's motion to dismiss the conversion claim is denied.

## VI. Negligence

Finally, Sembach has set forth a claim for negligence against Safeguard in Count VII. "To prove a defendant's negligence under Illinois law, a plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1022 (7th Cir. 2018). Sembach claims that once Safeguard entered the Property to perform property preservation services there, Safeguard assumed a duty to exercise reasonable care that it breached by failing to protect or secure the Property and the personal property inside.

As an initial matter, Safeguard denies that it owed a duty of care to Sembach, claiming that it neither visited the Property nor engaged in any work there. That contention, however, ignores the amended complaint's allegations that "Safeguard voluntarily exercised control and dominion over the Property" and "took affirmative steps to control access to and possession of the Property by changing the locks, restricting access for a period of time, and exercising dominion

13

and control over the personal property therein." (Am. Compl. ¶¶ 146–47.) In such cases, tort liability is imposed where the defendants "have failed to take reasonable care to avoid foreseeable injury to plaintiff or [her] property." *Obradovich*, 2016 WL 1213920, at *5.

Next, Safeguard asserts that the amended complaint fails to show how Safeguard breached any duty it might have owed to Sembach because it contains no allegations that preservation services performed at the property were deficient. The Court disagrees. Sembach has alleged that when she visited the Property on August 25, 2017, the Property was unlocked, certain personal property had been damaged or destroyed, and other personal property had gone missing. Thus, Sembach has a plausible claim that Safeguard failed to secure the Property properly and that such conduct proximately caused injury to the Property and the personal property inside of it. Those allegations are sufficient for Sembach's negligence claim to survive a motion to dismiss. Accordingly, Safeguard's motion to dismiss the negligence claim is denied as well.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 37, 46) are granted in part and denied in part. The motions are granted as to Counts I and II of the amended complaint, which are dismissed with prejudice, and denied as to the remaining Counts III through VII.

ENTERED:

Dated: August 20, 2021

_____
Andrea R. Wood
United States District Judge

14