**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA SEMBACH, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>LAKEVIEW LOAN SERVICING, LLC )<br>M&T BANK, and SAFEGUARD )<br>PROPERTIES MANAGEMENT, LLC )<br>)<br>Defendants. ) | Case No. 1:20-cv-00752<br><br>Honorable Judge Andrea R. Wood |

**DEFENDANT SAFEGUARD PROPERTIES MANAGEMENT, LLC'S**
**MOTION FOR ENTRY OF DEFAULT AGAINST 3C PRICE, INC.**

NOW COMES Defendant/Third-Party Plaintiff Safeguard Properties Management, LLC ("Safeguard"), through its attorneys, Tribler Orpett & Meyer, P.C., for its Motion for Entry of Default against 3C Price, Inc. ("3C Price") pursuant to Federal Rule of Civil Procedure Rule 55(a) ("FRCP Rule 55"), states as follows:

1. Plaintiff filed her Amended Complaint ("Complaint") in six counts against Safeguard. In the Complaint, Plaintiff alleged that she incurred damages on or about August 27, 2017 when she discovered that certain preservation services were performed at 4019 206th Street, Matteson, Illinois 60443 (the "Property").

2. On September 03, 2021, Safeguard filed a Third-Party Complaint for Contribution and Indemnification Against 3C Price ("Third-Party Complaint"). (Dkt. #71) (See Third-Party Complaint, attached as **Exhibit #1**).

3. On September 8, 2021, the Registered Agent for 3C Price, Josalan Poole, was served with a copy of the Third-Party Complaint via certified mail. (See Documentation reflecting service of 3C Price via certified mail, attached as **Exhibit #2A-2C**).

4. As of today's date, 3C Price has failed to appear in this action and has failed to answer Safeguard's Third-Party Complaint or otherwise plead. (See Dkt. #71-Dkt. #78).

5. As a corporate entity,  3C Price has been properly served with the Third-Party Complaint and has failed to defend the action against it. A copy of this Motion for Entry of Default is also being served upon the Registered Agent of 3C Price, Inc., at the same address as the original waiver of summons. (See Affidavit of Panos T. Topalis, attached as **Exhibit 3**).

Wherefore, Safeguard seeks an entry of default against 3C Price, Inc. as well as such other and further relief this Court deems fair and equitable.

Respectfully Submitted,


TRIBLER ORPETT & MEYER, P.C.

    s/ Panos T. Topalis

_____

One of the attorneys for Defendant

Panos T. Topalis – ARDC #6202025
Kevin J. Grigsby - ARDC #6332750
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 2550
Chicago, IL 60606
(312) 201-6400
pttopalis@tribler.com
kjgrigsby@tribler.com

SERVICE VIA E-MAIL WILL BE ACCEPTED AT DOCKET@TRIBLER.COM

## <u>CERTIFICATE OF SERVICE</u>

        The undersigned hereby certifies that a true and correct copy of the defendant Safeguard Properties Management, LLC's Motion for Entry of Default Against 3C Price, Inc. was served upon:

**<u>Attorney for Plaintiff</u>**
Joseph Scott Davidson, Esq.
Mohammed Omar Badwan, Esq.
Victor Thomas Metroff, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com
vmetroff@sulaimanlaw.com

**<u>Attorneys for Defendants,</u>**
**<u>Lakeview Loan Servicing, LLC</u>**
**<u>And M&T Bank Corporation</u>**
Punit Kumar Marwaha, Esq.
Troutman Sanders LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(312) 759-5949
Punit.Marwaha@troutmansanders.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 12th day of November, with proper postage prepaid.

                                            s/     Panos T. Topalis
                                            an Attorney

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA SEMBACH, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-00752 |
| v. | ) | |
| | ) | Honorable Judge Andrea R. Wood |
| | ) | |
| LAKEVIEW LOAN SERVICING, LLC | ) | |
| M&T BANK, and SAFEGUARD | ) | |
| PROPERTIES MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD-PARTY COMPLAINT FOR CONTRIBUTION AND INDEMNIFICATION AGAINST 3C PRICE, INC.

Defendants/Third-Party Plaintiffs Safeguard Properties Management, LLC ("Safeguard"), through its attorneys, Tribler Orpett & Meyer, P.C., state the following Third-Party Complaint against 3C Price, Inc. ("3C Price") as an alternative pleading and without prejudice to their earlier denials as to liability and fault:

### Count I

1.       Plaintiff filed her Amended Complaint ("Complaint") in six counts against this defendant. In the Complaint, Plaintiff alleged that she was injured on or about August 27, 2017 when she discovered that certain preservation services were performed at 4019 206th Street, Matteson, Illinois 60443 (the "Property").

2.       More particularly, Plaintiff alleged that certain items of personal property were removed from the Property, and that the Property itself sustained damage as a result of the preservation services that were performed.

**Exhibit 1**

3.     Addressing the counts filed against it, Safeguard filed a motion to dismiss Count II through Count VII of the Complaint. (A copy of the motion to dismiss is attached as Exhibit #1.) Safeguard's motion to dismiss was granted in part and denied in part and Safeguard subsequently filed its answer to Count III through Count VII of the Complaint on the same day as this Third-Party Complaint. (A copy of the answer is attached as Exhibit #2).

4.     On or about February 4, 2015, 3C Price entered into a written Master Services Agreement ("Agreement") with Safeguard as a contractor to perform mortgage field services ("Services"), to be set forth in a series of work orders ("Work Orders"), which described a specific property to be serviced and the type of services to be completed by a specific date.  (A copy of the Agreement is attached hereto as Exhibit #3, and incorporated into this complaint by reference.)

5.     On or about August 1, 2017, Safeguard issued a Work Order for performance of specific Services at the Property.

6.     On or about August 4, 2017 3C Price entered the Property to perform Services pursuant to the Work Order.

7.     The Complaint alleges that as a result of the Services performed at the Property by 3C Price, Plaintiff suffered significant damages, including but not limited to, emotional damages, loss of possession of the Property, deprivation of the use of the Property, and loss of certain personal property.

8.     If there were any negligent acts or omissions that injured Plaintiff, such were those of 3C Price in that it engaged in the conduct listed below, as alleged in the Complaint:

    a.   Failed to protect or secure the Property and its contents;

    b.   Violated the law;

    c.   Failed to follow Safeguard's formalized procedures;

    d.   Failed to use reasonable care when securing the Property;

    e.   Absconded with Plaintiff's personal property;

    f.   Failed to prevent any property loss after voluntarily exercising control and dominion over the Property and its contents.

9.    If Plaintiff is found to have been injured, as aforesaid, any such injury was the result of one or more of the negligent acts or omissions on the part of 3C Price.

10.    As a result of one or more of the negligent acts or omissions on the part of 3C Price, Safeguard is entitled to contribution from 3C Price in an amount to be determined by the trier of fact.

Wherefore, if judgment is entered against Safeguard and in favor Plaintiff, Safeguard is entitled to contribution from 3C Price pursuant to the Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 *et seq.,* in the fullest amount allowed by law.

## **Count II**

1-10.    Safeguard restates and repeats the allegations of paragraphs 1.-10. of Count I and for its allegations to paragraphs 1.-10. of Count II as though fully incorporated herein.

11.    The Agreement included a provision entitled "Indemnity", which states:

> 22. INDEMNITY. Contractor assumes sole and complete responsibility for any and all acts and omissions of any Personnel engaged in the performance of Services or the fulfillment of Work Orders. Contractor agrees to save, reimburse, indemnify and hold harmless Safeguard, its affiliates, its clients, and all of their respective partners, officers, employees, representatives and agents (collectively, "Indemnitees") from and against any and all claims, allegations, damages, liability, penalties, fees, assessments, charges, attorneys' fees, costs, and expenses (collectively, "Claims"), relating to or stemming from (a) any failure or alleged failure by Contractor or by any Personnel to satisfactorily fulfill all of Contractor's obligations under this agreement; (b) any act, omission or negligence by Contractor or any Personnel, or by Contractor's agents, representatives, or subcontractors, which relate to the Services or any Work Order, including the performance or non-performance thereof; (c)

any property damage or bodily injury (including death, no matter when death occurs) caused by or related to the negligence, act, or omission of Contractor or any Personnel; (d) any finding, allegation, or Claim that any Personnel are employees of Safeguard for any purpose or under any applicable statutory or regulatory scheme or legal standard, including, for example, state workers compensation or unemployment laws, the Patient Protection and Affordable Care Act, the Employee Retirement Income Security Act, the National Labor Relations Act, the Fair Labor Standards Act, or any vicarious liability or respondeat superior doctrine; (e) any failure or alleged failure by Contractor or any Personnel to adhere to any applicable law, rule, or regulation of any governing body having jurisdiction over the Services or a Work Order; (f) any reasonable steps taken by Safeguard in an effort to remove any lien filed by any Personnel or to prevent any threatened lien(s) from being filed by any Personnel (reasonable steps for these purposes shall include any expenses incurred by Safeguard as a result of Safeguard making a payment to Personnel for purposes of removing a lien or preventing the filing of a lien); (g) any Claim against any of the Indemnitees based upon facts or circumstances which Contractor has assumed responsibility through this Agreement; or (h) any Claim against any of the Indemnitees by any Personnel

(Exhibit #1, paragraph 20.)

12.     Pursuant to this provision, 3C Price is required to indemnify Safeguard for the amount of any settlement or judgment which it might be required to pay to Plaintiff.

13.     Safeguard therefore prays for the following relief:

a.  That 3C Price be required to reimburse Safeguard for the amounts of any costs or attorneys' fees incurred in the defense of this matter;

b.  That 3C Price be required to indemnify Safeguard for the amount of any settlement or judgment which it might be required to pay to Plaintiff;

c.  Such other and further relief as this Court deems fair and equitable.

TRIBLER ORPETT & MEYER, P.C.

s/ Panos T. Topalis

_____
One of the attorneys for Defendant

Panos T. Topalis – ARDC #6202025
Kevin J. Grigsby - ARDC #6332750
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 2550
Chicago, IL 60606
(312) 201-6400
pttopalis@tribler.com
kjgrigsby@tribler.com

SERVICE VIA E-MAIL WILL BE ACCEPTED AT DOCKET@TRIBLER.COM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the Safeguard Properties
Management, Inc.'s Third-Party Complaint for Contribution and Indemnification against 3C
Price, Inc. was served upon:

**<u>Attorney for Plaintiff</u>**
Joseph Scott Davidson, Esq.
Mohammed Omar Badwan, Esq.
Victor Thomas Metroff, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com
vmetroff@sulaimanlaw.com

**<u>Attorneys for Defendants,
Lakeview Loan Servicing, LLC
And M&T Bank Corporation</u>**
Punit Kumar Marwaha, Esq.
Troutman Sanders LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(312) 759-5949
Punit.Marwaha@troutmansanders.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any
party who is not a Filing User or represented by a Filing User by mailing a copy to the above-
named attorney or party of record at the address listed above, from 225 W. Washington Street,
Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 3 day of September, with proper
postage prepaid.

s/      Panos T. Topalis
an Attorney

# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SEMBACH, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-00752 |
| v. | ) | |
| | ) | Honorable Judge Andrea R. Wood |
| | ) | |
| LAKEVIEW LOAN SERVICING, LLC | ) | |
| M&T BANK, and SAFEGUARD | ) | |
| PROPERTIES MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SAFEGUARD PROPERTIES MANAGEMENT, LLC'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Now comes defendant, SAFEGUARD PROPERTIES MANAGEMENT, LLC, ("Safeguard") by and through its attorneys, Tribler Orpett & Meyer P.C., and for its motion to dismiss CYNTHIA SEMBACH'S First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) states as follows:

## INTRODUCTION

Cynthia Sembach is attempting to assert various causes of against Safeguard Properties Management, LLC ("Safeguard") and other defendants in its First Amended Complaint, filed on June 10, 2020. (Dkt. #31). In the six counts filed against Safeguard, Plaintiff asserts claims for (1) Intentional Infliction of Emotional Distress ("IIED"); (2) Intrusion Upon Seclusion; (3) common law trespass; (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 805 ILCS 505, et. seq. (the "ICFA"); (5) conversion; and (6) negligence. These claims stem from,

1

**Exhibit 1**

*inter alia,* alleged entries into Ms. Sembach's home by Safeguard from early August, 2017, through August 25, 2017. For the reasons stated herein, each of the six counts filed against Safeguard must be dismissed with prejudice.

Count I of the First Amended Complaint (the "Complaint") asserts a claim for breach of contract against Lakeview Loan Servicing, LLC ("Lakeview") and is not directed against Safeguard. Count II of the Complaint for IIED must be dismissed because it is time-barred and because Safeguard did not engage in any extreme and offensive conduct. Count III of the Complaint for intrusion upon seclusion must also be dismissed because Plaintiff has failed to plead facts required to satisfy the elements required to state a valid claim. Count IV must be dismissed because Plaintiff abandoned the property and defaulted under the terms of the mortgage executed on October 7, 2015 (the "Mortgage") which entitled M&T Bank Corporation ("M&T Bank") to take actions necessary to secure the Property. (Dkt. 22-1). Count V asserting violations of the ICFA must be dismissed because Safeguard did not engage in deceptive or unfair conduct and acted at the direction of M&T Bank pursuant to the terms of the Mortgage. Count VI of the Complaint must be dismissed because Plaintiff failed to make any pre-suit demand from Safeguard for the allegedly converted property as required by Illinois law. Count VII must also be dismissed because Plaintiff was owed no duty by Safeguard. Accordingly, as argued below, this Court must dismiss all counts of Plaintiff's First Amended Complaint directed against Safeguard with prejudice.

**FACTS**

**I.     Introduction**

Plaintiff was the defendant of a foreclosure action initiated by M&T Bank related to the subject property located at 4019 206th St., Matteson, IL 60643 (the "Property") in a case styled as *Lakeview Loan Servicing, LLC v. Cynthia Sembach*, Case No. 2018-CH-03159 (the "Foreclosure

Action"). On October 25, 2018, an order of default and a judgment of foreclosure were entered against Plaintiff in the Foreclosure Action. (Dkt. 38, p. 3).

The Complaint alleges that on August 25, 2017, Plaintiff visited the Property to find that Safeguard "winterized" the Property, changed the locks to the home and threw out some of Plaintiff's belongings. (FAC ¶ 44-48). The Complaint further alleges that Plaintiff contacted M&T Bank on August 27, 2017 to inform them of her discovery. (FAC ¶ 49). Plaintiff filed this action against Safeguard on June 10, 2020.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require a plaintiff to allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). "[N]aked assertions devoid of further factual enhancement" that are merely consistent with a violation of law do not satisfy this standard. *Iqbal,* 556 U.S. at 678 (internal quotation marks omitted). Instead, a plaintiff must allege facts that establish a claim to relief that is plausible on its face and which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. Allegations that are "consistent with" liability but which have "more likely explanations" do not plausibly state claims for relief. *Id.* at 678-79.

## ARGUMENT

**I.      ALL SIX COUNTS OF THE FIRST AMENDED COMPLAINT DIRECTED AGAINST SAFEGUARD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**A. Count II Of The Complaint Asserting A Claim For Intentional Infliction Of Emotional Distress Must Be Dismissed Because The Claim Is Time-Barred By 735 ILCS 5/13-202 And Because Neither Safeguard Nor Its Vendors Acted In An Extreme And Outrageous Manner.**

3

Plaintiff's claim for IIED asserted in Count II must be dismissed with prejudice because it is well established that in Illinois, IIED claims are subject to the two-year statute of limitations for personal injuries provided by 735 ILCS 5/13-202. Plaintiff contends she first learned that Safeguard entered the Property on April 22, 2020 and argues that her cause of action against Safeguard accrued on this date. (FAC ¶ 69). Although no Safeguard employees have ever set foot in the Property and consequently, Plaintiff's assertion concerning an unlawful entry is clearly erroneous, any cause of action for IIED against Safeguard would have accrued in August, 2017.

Plaintiff relies on *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) for the proposition that a cause of action does not accrue until the plaintiff discovers the fact that they have been injured and, more importantly for purposes of this motion, who caused the injury. (FAC ¶ 69). Nevertheless, the Seventh Circuit has recognized that a statute of limitations "starts running when the prospective plaintiff discovers (or should if diligent have discovered) both the injury that gives rise to [her] claim and the injurer". *Jay E. Hayden Foundation v. First Neighbor Bank, N.A*, 610 F.3d 382 (7th Cir. 2010) (citing *United States v. Kubrick*, 444 U.S. 111, 123-24 (1979)).

It is undisputed that Plaintiff discovered the alleged injury giving rise to her claim in Count II on August 25, 2017, when she visited the property and observed its condition. (FAC ¶ 44-48). In her complaint, plaintiff claims that she did not learn of Safeguard's involvement until receiving work orders and photographs attached as Exhibits B and C to defendants Lakeview and M & T Bank's Motion to Dismiss, on April 22, 2020. Dkt. #22-2, 22-3)

Safeguard attaches as part of this motion additional photographs taken the same day referenced in Plaintiff's Complaint, contained in the work orders and taken by its vendor. Specifically, the photographs, depict securing notices and sign-in sheet left at the Property, and they all identify Safeguard Properties to be contacted should there be an issue. These photographs are dated the same day, August 17, 2017, as depicted in Dkt. #22-2 and #22-3, as referenced in Par. 70 of Plaintiff's Complaint. (see Exhibit A, Exhibit B, and Exhibit C). These photographs taken inside and outside the subject property clearly show that

4

Plaintiff unquestionably should have discovered Safeguard's identify when she entered the property on August 25, 2017, as the stickers and sign-in sheet were present at least 8 days prior to that time.

The Illinois Supreme Court has recognized that "the applicable statute of limitations for intentional infliction of emotional distress is two years, because the tort is a form of personal injury." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003) (citing 735 ILCS 5/13-202 (West 1998)). As such, Plaintiff's cause of action against Safeguard for IIED lapsed on August 25, 2019, two years after she discovered her alleged injury and should have discovered Safeguard as her alleged injurer. Plaintiff did not file the Complaint against Safeguard until June 10, 2020. (Dkt. 31)

Even if it is determined that Plaintiff's claim for IIED is not time-barred, Count II nonetheless must be dismissed because Safeguard nor its vendors engaged in conduct that was extreme and outrageous, a key element required to sustain a cause of action for IIED. In *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041 (2016), the Supreme Court of Illinois found that the defendants conduct undertaken when engaging in property preservation services was not extreme and outrageous. In *Schweihs*, the defendants entered the plaintiff's home to engage in property preservation services, under the terms of the mortgage that plaintiff had with Chase Bank. The Illinois Supreme Court found that the defendant's conduct "did not rise to the level of extreme and outrageous" to sustain an IIED claim, as Chase had a contractual right to order Safeguard (who was a party in that case) to perform property preservation services on that property. *Id.* at ¶ 54. In light of this standard, property preservation services conducted by vendors for Safeguard at the Plaintiff's Property under nearly identical circumstances, cannot rise to the level of extreme and outrageous conduct to sustain an IIED claim against Safeguard.

Accordingly, Plaintiff's claim in Count II of the Complaint against Safeguard for IIED must be dismissed as a matter of law because the action was commenced more than 9 months after the time period permitted by the applicable the statute of limitations and neither Safeguard nor its vendors engaged in extreme or outrageous conduct to allow Plaintiff to sustain an IIED claim against Safeguard.

**B. Count III Of The Complaint Asserting A Claim For Intrusion Upon Seclusion Must Be Dismissed Because Plaintiff Has Failed To Plead The Elements Required To State a Cause Of Action.**

With respect to Counts III through Count V of the First Amended Complaint, Safeguard adopts the arguments asserted in Lakeview's and M&T Bank's Memorandum in Support of Motion To Dismiss Plaintiff's First Amended Complaint (the "Co-Defendants' Memo") as its own. (Dkt. 38, pp. 7-8).

In addition to these arguments, Plaintiff's claim for intrusion upon seclusion asserted against Safeguard in Count III cannot be sustained because Plaintiff was no longer living at the property and was not present at the time of the alleged intrusion. The undisputed facts show that Plaintiff relocated from the property in February, 2017. (FAC ¶ 25). Nevertheless, Plaintiff did not make the discovery giving rise to her claims in Count III until August 25, 2017. (FAC ¶¶ 44-48). There is nothing alleged in the First Amended Complaint that Safeguard or any vendors ever visited the Property or intruded upon Plaintiff's seclusion in any manner while she was present.

The alleged intrusion by Safeguard's vendors was at the direction of M&T Bank and was authorized as evidenced by the order of default issued against Plaintiff in the Foreclosure Action. Further, the alleged intrusion into the Property that was vacated by the Plaintiff six-months prior to the incident is not highly offensive to a reasonable person. Accordingly, Plaintiff cannot state a cause of action for intrusion upon seclusion and Count III of the Complaint must be dismissed with prejudice as a matter of law.

**C. Count IV Of The Complaint Asserting A Claim For Trespass Must Be Dismissed Because Safeguard Was Authorized To Enter The Property.**

In addition to those arguments set forth by co-defendants M & T and Lakeview, Plaintiff's claim for trespass asserted against Safeguard in Count IV must be dismissed with prejudice because the allegations of the Complaint are clear that Plaintiff abandoned the Property. Moreover, Safeguard acted reasonably when it instructed its vendors to secure the Property at the behest of

M&T Bank and pursuant to Section 5 of the Mortgage. (see Dkt. 22-1). As stated above, Plaintiff relocated from the Property in February, 2017. (FAC ¶ 25).

Accordingly, Count IV the Complaint against Safeguard for trespass must be dismissed with prejudice as a matter of law. Any entry into the Property by vendors for Safeguard was authorized by the Mortgage and as indicated by the finding of default against Plaintiff in the Foreclosure Action. Additionally, vendors for Safeguard acted upon the requests of M&T Bank and determined that the Property was abandoned prior engaging in preservation activities. Therefore, for all these reasons, Plaintiff cannot sustain a claim for trespass against Safeguard and Count IV should be dismissed with prejudice.

### D. Count V Of The Complaint Asserting Claims Under the ICFA Must Be Dismissed Because Safeguard Failed To State A Cognizable Claim.

In addition to the arguments asserted by M & T and Lakeview and adopted by Safeguard, Plaintiff's ICFA claim asserted in Count V cannot be sustained because Safeguard did not act in a deceptive manner nor did it engage in any "unfair conduct" as defined by the ICFA. Plaintiff alleges that it was unfair and deceptive for Defendants to deem the property abandoned. (FAC ¶ ¶ 123-24). However, in *Federal National Mortgage Association v. Obradovich*, 2020 WL 2767578 (N.D. IL 2020), this Court found that the defendants did not engage in deceptive conduct where a notice of foreclosure was sent to the plaintiffs prior to the winterization activities, and the plaintiffs "were well aware that they were not making payments on the Loan." *Federal National Mortgage Association v. Obradovich*, 2020 WL 2767578, *7 (N.D. IL 2020). Likewise, Plaintiff was in default on her loan and collection efforts were ongoing for an entire year before the Property was deemed abandoned and winterization efforts were initiated. (FAC ¶ ¶ 20-23). Plaintiff has failed to assert allegations sufficient to support the idea that Safeguard committed a deceptive act or intended for the Plaintiff to rely upon its allegedly deceptive conduct. Moreover, there are no allegations whatsoever that Safeguard made any statements or communications to plaintiff that would be deceptive anywhere in the Complaint.

Plaintiff's argument concerning "unfair conduct" under the ICFA is equally unavailing. When evaluating whether conduct is unfair under the ICFA, the relevant inquiries concern "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). When considering whether this standard is met, the Seventh Circuit evaluates "whether a defendant's conduct is so oppressive as to leave the consumer with little alternative except to submit to it." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014).

Here, unlike in *Obradovich*, the conduct of Safeguard's vendors was not oppressive. Notably, Plaintiff does not allege that Safeguard's conduct damaged the Property nor does she assert that Safeguard's conduct had an impact on her short-sale efforts. The lack of damaged alleged by Plaintiff comes in stark contrast to *Obradovich* where the plaintiffs were left with no option other than to submit to the actions of the defendants. The Property was vacant for six-months before it was secured and winterization efforts were initiated. Further, vendors for Safeguard were dispatched to the Property at the behest of M&T Bank who was entitled to secure the Property in accordance with Section 5 of the Mortgage. In light of the lack of damage caused by the winterization efforts and in light of M&T Bank's contractual rights to secure the premises, Plaintiff has failed to allege "unfair conduct" sufficient to sustain a claim against Safeguard under the ICFA.

Accordingly, Count V of Plaintiff's First Amended Complaint against Safeguard for violations of the ICFA must be dismissed with prejudice as a matter of law. Vendors for Safeguard acted upon the requests of M&T Bank and neither acted in a deceptive manner nor did they engage in any unfair conduct to permit recovery under the ICFA.

### E. Count VI Of The Complaint alleging Conversion Must be Dismissed Because Plaintiff Failed To Make A Pre-Suit Demand For Return Of The Allegedly Converted Property As Required By Illinois Law.

Count VI of the Complaint must be dismissed by this Court because Plaintiff has failed, and is unable, to state a cause of action for conversion. In Illinois, a cause of action for conversion

requires the plaintiff to demonstrate "(1) An unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) *a demand by plaintiff for possession thereof.*" *Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988) (emphasis in original). The Seventh Circuit has recognized that in Illinois, the filing of a lawsuit does not serve as the pre-suit demand required to sustain a claim for conversion. See *Stevens v. Interactive Financial Advisors, Incorporated*, 830 F.3d 735 (7th Cir. 2016) (affirming district court's judgment finding that filing a lawsuit did not satisfy the pre-suit demand required to support a conversion claim).

Any entries into the Property by vendors for Safeguard or exercise of dominion over Plaintiff's property was at the behest of M&T Bank and was authorized by Section 5 of the Mortgage to allow for property preservation services when a loan was in default. This was confirmed by the order of default entered against Plaintiff in the Foreclosure Action. Further, Plaintiff admits in the Complaint that she did not contact Safeguard to make a pre-suit demand for return of the allegedly converted items. (FAC ¶ 143). Plaintiff's failure to make the required pre-suit demand is further amplified by the fact that contact information for Safeguard was present in various locations throughout the Property when Plaintiff visited on August 25, 2017. (see Exhibit A, Exhibit B, and Exhibit C). Although Plaintiff propounds the baseless allegation that a demand would have been futile, additionally, she offers noting to support the contention that Safeguard sold or otherwise disposed of the property. *Id.*

Accordingly, for the reasons stated above, Count VI of the Complaint against Safeguard for conversion must also be dismissed with prejudice as a matter of law. Vendors for Safeguard acted upon the requests of M&T Bank and were authorized to perform property preservation services under the terms of the mortgage. Moreover, Plaintiff failed to make a pre-suit demand for the allegedly converted property and has failed to demonstrate that the required demand would be futile.

**F.  Count VII Of Plaintiff's Complaint Asserting A Claim For Negligence Must Be Dismissed Because Plaintiff Was Not Owed A Duty By Safeguard.**

This Court must dismiss Count VII of the Complaint attempting to plead negligence because Plaintiff has not, and is unable, to plead a recognized legal duty against Safeguard. It is well-established that "[t]o prove a defendant's negligence under Illinois law, a plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1022 (7th Cir. 2018). While a duty is not created automatically, "[e]very person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012).

Here, Safeguard did not owe Plaintiff a duty as it neither visited the Property nor engaged in any work at the Property. At no point in time did Safeguard exercise control or dominion over the Property or Plaintiff's personal property as alleged in the Complaint. (FAC ¶ 146). Further, Plaintiff fails to allege with any detail how Safeguard breached its purported duty. Plaintiff propounds general allegations that Safeguard failed to secure the Property, violated the law, failed to follow its own formalized procedures, and failed to use reasonable care when securing the property (FAC ¶ 149). Nevertheless, Plaintiff does not allege how Safeguard failed to secure the Property, what law Safeguard purportedly violated, what formalized procedures Safeguard failed to follow, or how Safeguard failed to use reasonable care when it secured the property. Unlike this Court's decision in *Obradovich* where the plaintiff raised allegations of specific property damage, Plaintiff only raises broad and unsupported allegations concerning the loss of personal property as a result of Safeguard's alleged negligence, with no allegations as to how Safeguard proximately caused the resulting loss of property, or any legal relationship between plaintiff and Safeguard or any facts which would support a legal duty between plaintiff and Safeguard to establish a negligence claim.

10

Plaintiff is unable to assert a cause of action for negligence against Safeguard.  It did not owe a duty to Plaintiff nor could it be the proximate cause of the damages alleged. Plaintiff has failed to allege, and is unable to prove, any of the four elements required to sustain an action for negligence. Accordingly, Count VII of the Complaint against Safeguard for negligence must be dismissed with prejudice as a matter of law.

## CONCLUSION

For the foregoing reasons, Safeguard Properties Management, LLC, respectfully requests that the Court dismiss Plaintiffs First Amended Complaint, with respect to all the claims filed against it.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.


By:  s/Panos T. Topalis
        One of defendant's attorneys


Panos T. Topalis, Esq. ARDC #6202025
Kevin J. Grigsby, Esq. ARDC #6332750
pttopalis@tribler.com
kjgrisby@tribler.com
TRIBLER ORPETT & MEYER, P.C.
225 West Washington Street, Suite 2550
Chicago, Illinois 60606
(312) 201-6400

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Safeguard Properties Management, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint was served upon:

**Attorney for Plaintiff**
Joseph Scott Davidson, Esq.
Mohammed Omar Badwan, Esq.
Victor Thomas Metroff, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com
vmetroff@sulaimanlaw.com

**Attorneys for Defendants,**
**Lakeview Loan Servicing, LLC**
**And M&T Bank Corporation**
Punit Kumar Marwaha, Esq.
Troutman Sanders LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(312) 759-5949
Punit.Marwaha@troutmansanders.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 27th day of July, 2020, with proper postage prepaid.

s/Panos T. Topalis
an Attorney

12

# EXHIBIT A



7887 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2700

www.safeguardproperties.com

**Client:** M&T Bank
**Loan Number:** 0100830074
**Loan Type:** FHA (137-828269)

**Mortgagor:** CYNTHIA SEMBACH
**Address:** 4019   206TH STREET
MATTESON, IL 60443



# 3839096124 - Condition
General Property Condition
Order Number: 192440529
Order Category: General Property Info
Completed Date: 08/17/2017

07/23/2020, 16:59:23 EST

# EXHIBIT B



**Safeguard**
Properties

7887 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2700
www.safeguardproperties.com

**Client:** M&T Bank
**Loan Number:** 0100830074
**Loan Type:** FHA (137-828269)

**Mortgagor:** CYNTHIA SEMBACH
**Address:** 4019   206TH STREET
MATTESON, IL 60443



\# 3839097092 - Condition
Securing Sticker
Order Number: 192440529
Order Category: General Property Info
Completed Date: 08/17/2017

07/23/2020, 16:59:23 EST

# EXHIBIT C



7887 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2700

www.safeguardproperties.com

**Client:** M&T Bank  
**Loan Number:** 0100830074  
**Loan Type:** FHA (137-828269)

**Mortgagor:** CYNTHIA SEMBACH  
**Address:** 4019   206TH STREET  
MATTESON, IL 60443

# 3839109104 - Document  
Sign In Sheet  
Order Number: 192440529  
Order Category: General Property Info  
Completed Date: 08/17/2017

07/23/2020, 16:59:23 EST

# Exhibit 2

486.26875

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SEMBACH, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-00752 |
| v. | ) | |
| | ) | Honorable Judge Andrea R. Wood |
| | ) | |
| LAKEVIEW LOAN SERVICING, LLC | ) | |
| M&T BANK, and SAFEGUARD | ) | |
| PROPERTIES MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the defendant, SAFEGUARD PROPERTIES MANAGEMENT, LLC, by and through its attorneys, TRIBLER ORPETT & MEYER, P.C., and for its Answer to Plaintiff's First Amended Complaint at Law, states as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action seeking redress for breach of contract, intentional infliction of emotional distress, intrusion upon seclusion, trespass to property, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS 505/1 *et seq*.), conversion, and negligence.

**ANSWER:     Paragraph 1 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

**Exhibit 2**

## PARTIES

2.      CYNTHIA SEMBACH ("Plaintiff") is a natural person domiciled in the State of

Indiana.

**ANSWER:      Safeguard has insufficient knowledge upon which to form a belief as to the**

**truth of the allegations in paragraph 2 and, therefore, neither admits nor denies these**

**allegations but demands strict proof thereof.**

3.      LAKEVIEW LOAN SERVICING, LLC ("Lakeview") is a limited liability

company organized and existing under the laws of the State of Delaware. Lakeview is a

national mortgage originator and servicer. Lakeview originates and services thousands of mortgage

loans nationwide.

**ANSWER:      Safeguard has insufficient knowledge upon which to form a belief as to the**

**truth of the allegations in paragraph 3 and, therefore, neither admits nor denies these**

**allegations but demands strict proof thereof.**

4.      Lakeview maintains its principal place of business at 4425 Ponce De Leon

Boulevard, Coral Gables, Florida 33146.

**ANSWER:      Safeguard has insufficient knowledge upon which to form a belief as to the**

**truth of the allegations in paragraph 4 and, therefore, neither admits nor denies these**

**allegations but demands strict proof thereof.**

5.      Lakeview's sole member is Bayview MSR Opportunity Corp. ("Bayview MSR").
**ANSWER:      Safeguard has insufficient knowledge upon which to form a belief as to the**

**truth of the allegations in paragraph 5 and, therefore, neither admits nor denies these**

**allegations but demands strict proof thereof.**

6.      Bayview MSR is a corporation organized and existing under the laws of the

State of Delaware. Bayview MSR is a Delaware corporation.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 6 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

7.      Lakeview is a citizen of the State of Delaware.[1]

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 7 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

8.      M&T BANK ("M&T Bank") is a corporation organized and existing under the laws of the state of New York. M&T Bank is a national mortgage servicer. M&T Bank services thousands of mortgage loans nationwide.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 8 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

9.      M&T Bank maintains its principal place of business at One M&T Plaza, 8th Floor, Buffalo, New York 14203.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 41 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

10.     SAFEGUARD PROPERTIES MANAGEMENT, LLC ("Safeguard") is a Delaware limited liability company that provides property preservation services and debt

---

[1] For diversity jurisdiction purposes, the citizenship of a limited liability company (LLC) is the citizenship of each of its members. *Camico Mut. Ins. Co. v. Citizens Bank*, 473 F.3d 989, 992 (7th Cir. 2007).

collection services to mortgage loan servicers. Safeguard provides property preservation and debt collection services to mortgage loan servicers that service mortgage loans secured by real estate located in Illinois. Safeguard is registered with the Illinois Secretary of State.

**ANSWER:     Safeguard admits that it is a Delaware limited liability company and that it provides property preservation services and denies that it provides debt collection services. Safeguard admits that it is registered with the Illinois Secretary of State.**

11.     Safeguard maintains its principal place of business in Valley View, Ohio.

**ANSWER:     Safeguard admits the allegations in paragraph 11.**

12.     Safeguard's sole member is Safeguard Holdings, L.P.

**ANSWER:     Safeguard admits the allegations in paragraph 12.**

13.     Safeguard Holdings, L.P. is a Delaware limited partnership whose general partner is Safeguard Holdings, G.P., LLC. Safeguard Holdings, G.P., LLC is a Delaware limited liability company whose members are KJH Holdings Co., Inc., and four irrevocable family trusts. KJH Holdings Co., Inc. is an Ohio corporation with its principal place of business in Ohio. The four family trusts are all Ohio trusts with all their trustees, grantors, and beneficiaries being domiciled in and residents of Ohio.

**ANSWER:     Safeguard admits the allegations in paragraph 13.**

## JURISDICTION AND VENUE

14.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because (1) complete diversity of citizenship exists, and (2) the amount in controversy exceeds the sum or value of $75,000.00.

**ANSWER:     Paragraph 14 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required,**

**Safeguard neither admits nor denies the allegations in paragraph 14 but demands strict proof thereof.**

15.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**ANSWER:     Paragraph 15 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 15 but demands strict proof thereof.**

## FACTUAL ALLEGATIONS

16.     On October 7, 2015, Plaintiff executed a mortgage ("Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CMG Mortgage, Inc. d/b/a CMG Financial. *See* attached Exhibit A.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 16 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

17.     The Mortgage secured the purchase of Plaintiff's property located at 4019 206th Street, Matteson, Illinois 60443 ("Property" or "Plaintiff's Property").

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 17 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

18.     The Mortgage secured a promissory note executed by Plaintiff in the amount of $127,325.00 ("Loan").

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 18 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

19.     In August 2016, Plaintiff unexpectedly lost her job.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 19 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

20.     In August 2016, Cenlar was the mortgage servicer for the Loan and Mortgage.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 20 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

21.     After losing her job, Plaintiff promptly contacted Cenlar to request retention and non-retention alternatives to foreclosure.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 21 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

22.     Cenlar informed Plaintiff she was not eligible for retention programs, but agreed to evaluate Plaintiff for non-retention alternatives to foreclosure (e.g. short sale).

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 22 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

23.     Shortly thereafter, Cenlar deemed the Loan in default and began collection

activity on the Loan.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 23 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

24.    On December 28, 2016, MERS executed an Assignment of Mortgage in favor of Lakeview.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 24 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

25.    In February 2017, after securing employment in the State of Indiana, Plaintiff moved out of the Property and relocated to Fort Wayne, Indiana.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 25 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

26.    Despite her relocation, Plaintiff left a significant amount of her personal property at the Property.

**ANSWER:** **Safeguard denies the allegations in paragraph 26.**

27.    After relocating to Indiana, Plaintiff made weekly visits to the Property in an effort to maintain it and keep it in good condition.

**ANSWER:** **Upon information and belief, Safeguard denies the allegations in paragraph 27.**

28.    Specifically, Plaintiff maintained utility services for the Property and kept the Property in great condition to ensure its habitability and marketability.

**ANSWER:** **Safeguard denies the allegations in paragraph 28.**

29.     After relocating, Plaintiff discussed the possibility of a short sale with Cenlar in an effort to satisfy the Loan.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 29 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

30.     Cenlar advised Plaintiff that it would be open to a short sale and for Plaintiff to contact Cenlar once Plaintiff secured a short sale offer.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 30 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

31.     On May 18, 2017, Plaintiff received a short sale offer from a third party for $130,000.00.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 31 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

32.     Immediately after receiving the short sale offer, Plaintiff submitted a complete "Short Sale Package" to Cenlar.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 32 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

33.     The "Short-Sale Package" included all information and documents necessary to facilitate the short sale.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 33 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

34. On June 2, 2017, Lakeview acquired the Loan and delegated the servicing duties for the Loan to M&T Bank.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 34 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

35. On June 8, 2017, M&T Bank acknowledged receipt of the "Short Sale Package" and corresponding Loss Mitigation Application.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 35 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

36. On June 13, 2017, M&T Bank sent Plaintiff a correspondence acknowledging that Plaintiff's Loss Mitigation Application was complete.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 36 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

37. On July 7, 2017, M&T Bank sent Plaintiff a correspondence informing Plaintiff that she was approved for the HUD Pre-Foreclosure Sale program.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 37 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

38.     The approval letter expressly stated: "[i]f the property is vacant or becomes vacant during marketing, you must inform your lender immediately and ensure that the property is protected from freeze damage by 'winterizing' plumbing pipes."

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 38 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

39.     Soon thereafter, Plaintiff submitted additional documents necessary to complete the short sale process and M&T Bank acknowledged receipt of the same on August 3, 2017.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 39 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

40.     Shortly thereafter, M&T Bank (acting on behalf of Lakeview) issued a work order(s) to Safeguard to perform specific property preservation services at the Property. *See* attached Exhibit B.

**ANSWER:     Safeguard admits the allegations in paragraph 40.**

41.     At all times relevant, Plaintiff remained in constant contact with M&T Bank.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 41 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

42.     At no time did Plaintiff inform Defendants that the Property was vacant.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 42 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

43.     At all times relevant, the Property was furnished and well maintained.

**ANSWER:     Safeguard denies the allegations in paragraph 43.**

44.     On August 25, 2017, Plaintiff visited the Property as she did weekly after relocating to Fort Wayne, Indiana.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 44 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

45.     During this visit, Plaintiff discovered that her realtor's lockbox was missing and that the Property was unlocked.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 45 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

46.     After further investigation, Plaintiff discovered the locks to the Property's doors and sheds were changed.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 46 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

47.     Upon entering the Property, Plaintiff discovered that (1) the Property was "winterized;" (2) the windows were open; (3) the air conditioning was turned down to 50 degrees Fahrenheit; (4) the curtains were removed; and (5) the appliances were disconnected.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 47 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

48.     Moreover, Plaintiff discovered that food was missing from the food cabinets and that some of her antiques and mementos were missing from the Property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 48 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

49.     On August 27, 2017, enraged by the unauthorized trespass to the Property, Plaintiff called M&T Bank to inform M&T Bank of her startling discovery.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 49 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

50.     In response, M&T Bank informed Plaintiff that it unilaterally deemed the Property "abandoned" and that M&T Bank was exercising its right to possession of the Property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 50 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

51.     Moreover, M&T Bank repeatedly ignored Plaintiff's grievance regarding her missing personal property and did not offer to compensate Plaintiff for the missing personal property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 51 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

52.     On September 1, 2017, M&T Bank informed Plaintiff that Plaintiff's application for the HUD Pre-Foreclosure Sale program was approved.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 52 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

53.     On or around September 28, 2017, Plaintiff submitted another contract for $130,000.00 to M&T Bank for approval.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 53 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

54.     On December 12, 2017, M&T Bank informed Plaintiff that it could not approve Plaintiff's short sale as "[t]here are unacceptable terms on the HUD1."

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 54 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

55.     Confused by M&T's vague statement, Plaintiff pressed M&T Bank for more information.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 55 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

56.     In response, M&T Bank informed Plaintiff that the short sale could not be approved because the Property "needed repairs."

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 56 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

57.     However, M&T Bank refused to inform Plaintiff what repairs were needed.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 57 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

58.     Plaintiff continued her efforts to get approval for the short sale to no avail.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 58 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

59.     On February 23, 2018, M&T Bank informed Plaintiff that Plaintiff's Mortgage was forwarded to attorneys for foreclosure proceedings and that all communications moving forward must be sent to the attorneys.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 59 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

60.     On March 9, 2018, Lakeview initiated mortgage foreclosure proceedings against Plaintiff and the Property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 60 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

61.     At all times relevant, Plaintiff was the legal owner of the Property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 61 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

62.     At all times relevant, the Property was furnished, well-maintained (exterior in good condition, grass cut, no city code violations, etc.), and contained Plaintiff's personal property.

**ANSWER:     Safeguard denies the allegations in paragraph 62.**

63.     At all times relevant, Defendants had actual knowledge that Plaintiff was in the process of selling the home.

**ANSWER:     Safeguard admits that it had knowledge that a "For Sale" sign had been placed in front of the home, but denies that it had further information as to whether the property was listed, whether there was a pending offer or transaction, or any other specific information as to the "process of selling the home."**

64.     At all times relevant, Defendants did not have authority to enter the Property.

**ANSWER:     Safeguard denies the allegations in paragraph 64.**

65.     At all times relevant, Defendants did not notify Plaintiff that they would be sending representatives to the Property to determine if the subject property was vacant.

**ANSWER:     Safeguard denies the allegations in paragraph 65.**

66.     At all times relevant, Defendants did not have a legal right to enter the Property.

**ANSWER:     Safeguard denies the allegations in paragraph 66.**

67.     At all times relevant, Lakeview had a consensual agency relationship with M&T Bank whereby Lakeview (as the principal) had the right to control and direct the activities of M&T Bank, and M&T Bank had the authority to act on behalf of Lakeview. Lakeview, as the principal of M&T Bank, is liable for the acts of M&T Bank and M&T Bank's agents.

**ANSWER:    Paragraph 67 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 67 but demands strict proof thereof.**

68.    At all times relevant, M&T Bank had a consensual agency relationship with Safeguard whereby M&T Bank (as the principal) had the right to control and direct the activities of Safeguard, and Safeguard had the authority to act on behalf of M&T Bank. M&T Bank, as the principal of Safeguard, is liable for the acts of Safeguard and its agents.

**ANSWER:    Paragraph 68 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 68 but demands strict proof thereof.**

69.    Plaintiff first discovered that it was Safeguard, and not M&T Bank, that committed the unlawful entry into the Property on April 22, 2020, upon the filing of Lakeview and M&T Bank's Motion to Dismiss. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (Pursuant to the discovery rule, a cause of action accrues when the plaintiff discovers that "he has been injured and *who caused* the injury.")

**ANSWER:    Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 69 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

70.    Specifically, the Motion to Dismiss attached work orders to Safeguard that revealed, for the very first time, that it was Safeguard (on behalf of M&T Bank) that committed the conduct that gives rise to Plaintiff's claims. *See* Dkt. 22-2 (Exhibit B) and 22-3 (Exhibit C),

*see also* attached Exhibit B.

**ANSWER:** **Safeguard denies the allegations in paragraph 70.**

## DAMAGES

71.    As result of Defendants' unlawful conduct, Plaintiff suffered significant damages, including but not limited to, endless stress, severe anxiety, excruciating mental anguish, loss of possession of the Property, deprivation of the use of the Property, and loss of time.

**ANSWER:** **Safeguard denies the allegations in paragraph 71.**

72.    As set forth above, Defendants' unlawful conduct further resulted in the loss of valuable and sentimental personal property, including but not limited to:

- Aluminum metal table frame;

- Antique canister set;

- Antique lamps/parts;

- Antique rocker;

- Antique sewing machine;

- Bedding;

- Concrete bird bath;

- Curtains;

- Desk;

- Family photos;

- Food;

- Rolls of heavy duty vinyl;

- Tools (hammer, pliers, saws, screwdrivers); and

- Wood table tops.

**ANSWER:** **Safeguard denies the allegations in paragraph 72.**

73. Moreover, Defendants' unlawful conduct resulted in damaged/destroyed chair(s) and a portable workbench among other items.

**ANSWER:** **Safeguard denies the allegations in paragraph 73.**

74. As pled above, Defendants' conduct frustrated Plaintiff's effort to sell the Property or otherwise take advantage of loss mitigation offers. As a result, Plaintiff's financial liability on the Loan continued to accrue, exposing Plaintiff to an increased risk for a personal deficiency after the Property is sold.

**ANSWER:** **Safeguard denies the allegations in paragraph 74.**

75. As of the date of the filing of this lawsuit, Defendants have not made any effort to compensate Plaintiff for her losses.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 75 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

<u>CAUSES OF ACTION</u>

**Count I – Breach of Contract <u>(Against Lakeview)</u>**

Count I of Plaintiff's Complaint was dismissed pursuant to the Court's August 20, 2021 Memorandum and Order. (Dkt. #66).

**Count II – Intentional Infliction of Emotional Distress <u>(Against Safeguard)</u>**

Count II of Plaintiff's Complaint was dismissed pursuant to the Court's August 20, 2021 Memorandum and Order. (Dkt. #66).

## Count III – Intrusion Upon Seclusion <u>(Against All Defendants)</u>

101.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:     Safeguard adopts and restates its answers to paragraphs 1-100, inclusive, in Plaintiff's Complaint as its answer to the same numbered paragraphs of this count as though set forth fully herein.**

102.     To establish a claim for intrusion upon seclusion, Plaintiff must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd.*, 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

**ANSWER:     Paragraph 102 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

103.     Safeguard intruded into Plaintiff's seclusion by forcibly entering Plaintiff's Property without consent or valid reason to do so, damaging/destroying Plaintiff's personal property, stealing Plaintiff's personal property, and replacing the locks to the doors of entry and sheds.

**ANSWER:     Safeguard denies the allegations in paragraph 103.**

104.     Safeguard's course of conduct would be highly offensive to a reasonable person.

**ANSWER:     Safeguard denies the allegations in paragraph 104.**

105.     As pled above, Plaintiff was severely harmed by Safeguard's conduct.

**ANSWER:** **Safeguard denies the allegations in paragraph 105.**

Count IV – Trespass to Real Property
**<u>(Against All Defendants)</u>**

106. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER: Safeguard adopts and restates its answers to paragraphs 1-106, inclusive, in Plaintiff's Complaint as its answer to the same numbered paragraphs of this count as though set forth fully herein.**

107. To prevail on a trespass claim "a plaintiff must plead and prove negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).

**ANSWER:** **Paragraph 107 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

108. At all times relevant, Plaintiff owned the Property and had a legal right to exclusive possession of the Property.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 108 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

109. Defendants had actual knowledge that Plaintiff owned and adequately maintained the Property.

**ANSWER:** **Safeguard denies the allegations in paragraph 109.**

110.     Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the Property.

**ANSWER:     Safeguard denies the allegations in paragraph 110.**

111.     Without consent or a right to possession, Defendants placed foreign locks on the doors of the Property and sheds, thus depriving Plaintiff of immediate access to the Property and sheds.

**ANSWER:     Safeguard denies the allegations in paragraph 111.**

112.     Defendants' forced entry and trespass upon the Property interfered with Plaintiff's possession, ownership, use, and enjoyment of the Property.

**ANSWER:     Safeguard denies the allegations in paragraph 112.**

113.     Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

**ANSWER:     Safeguard denies the allegations in paragraph 113.**

114.     As pled above, Plaintiff was severely harmed by Defendants' conduct.

**ANSWER:     Safeguard denies the allegations in paragraph 114.**

Count V – Illinois Consumer Fraud and Deceptive Business Practices Act
**(Against All Defendants)**

115.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:** **Safeguard adopts and restates its answers to paragraphs 1-114, inclusive, in Plaintiff's Complaint as its answer to the same numbered paragraphs of this count as though set forth fully herein.**

116. Plaintiff is a "person" as defined by 815 ILCS 505/1(c).

**ANSWER:** **Paragraph 116 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 116 but demands strict proof thereof.**

117. Plaintiff is a "consumer" as defined by 815 ILCS 505/1(e).

**ANSWER:** **Paragraph 117 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 117 but demands strict proof thereof.**

118. Lakeview is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER:** **Paragraph 118 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 118 but demands strict proof thereof.**

119. M&T Bank is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER:** **Paragraph 119 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 119 but demands strict proof thereof.**

120.    Safeguard is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER:    Paragraph 120 states a legal conclusion, not a factual allegation, and thus no answer is required. To the extent it is later determined that an answer is required, Safeguard neither admits nor denies the allegations in paragraph 120 but demands strict proof thereof.**

121.    Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false, pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

**ANSWER:    Paragraph 121 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

122.    Defendants violated ICFA (815 ILCS 505/2) by engaging in the following conduct in the course of mortgage servicing and/or property management/preservation services:

> a.    Representing to Plaintiff, either expressly or by implication, and with the intent that Plaintiff rely on such representation, that Plaintiff is not entitled to occupy or use the Property when Plaintiff is, in fact, entitled to occupy and use the Property;
>
> b.    Taking possession of Plaintiff's Property without legal justification;
>
> c.    Taking control and asserting dominion over the Property without a court order

authorizing the same;

d. Employing self-help and taking possession of the Property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property);

e. Unlawfully breaking into Plaintiff's legally-occupied Property;

f. Changing the locks of the Property;

g. Draining and turning off the water in Plaintiff's legally-occupied Property;

h. Damaging/destroying Plaintiff's personal property;

i. Unlawfully removing personal property from Plaintiff's legally-occupied Property;

j. Exhibiting dominion and control over the Property, and implying that Plaintiff has lost her ownership rights to the Property;

k. Failing to adequately manage, supervise and train their employees/agents in the performance of property inspection and preservation services;

l. Committing unlawful trespass under the false pretext that such trespass was authorized by the Mortgage;

**ANSWER:     Safeguard denies the allegations in paragraph 122.**

123.    It was unfair and deceptive for Defendants to deem Plaintiff's Property "abandoned" or "vacant" when Defendants had actual knowledge that Plaintiff's Property was neither abandoned nor vacant and that Plaintiff was in the process of obtaining a buyer for the Property.

**ANSWER:     Safeguard denies the allegations in paragraph 123.**

124.    It was unfair and deceptive for Defendants to unilaterally deem Plaintiff's Property "abandoned" or "vacant" when Plaintiff's Property remained conspicuously occupied and well-maintained.

**ANSWER:     Safeguard denies the allegations in paragraph 124.**

125.     Defendants' course of conduct was intended to be relied upon by Plaintiff and to buffalo and bully Plaintiff into giving up her possessory rights.

**ANSWER:     Safeguard denies the allegations in paragraph 125.**

126.     Plaintiff relied upon these acts and was deceived into questioning the legal status of the ownership of the Property, doubting her right to own and use the Property free of invasion, believing a court order was unnecessary, becoming afraid to visit the Property, and losing the peaceful enjoyment and solitude of the Property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 126 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

127.     Defendants' conduct offends public policy as it demonstrates a widespread practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, circumventing the legal foreclosure process, and profiting from the expedited sale of real property. *See Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013) ("A practice that attempts to circumvent the foreclosure process established by Illinois law is against the public policy of Illinois).

**ANSWER:     Safeguard denies the allegations in paragraph 127.**

128.     Moreover, Defendants' conduct in bullying Plaintiff out of her Property in an effort to induce Plaintiff to abandon the Property in order to obtain a finding of abandonment is a crime under Illinois law. *See* 735 ILCS 5/15-1104 ("any person….who harasses or intimidates such occupants [of mortgaged real estate], with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment….shall be guilty of a class B misdemeanor.")

**ANSWER:** **Safeguard denies the allegations in paragraph 128.**

129.     The commission of such crime clearly violates public policy.

**ANSWER:** **Safeguard denies the allegations in paragraph 129.**

130.     Plaintiff had no choice but to submit to Defendants' conduct. Specifically, Plaintiff had no control over (1) the changing of the locks; (2) the theft of her personal property; (3) damage to her personal property; and (4) her inability to enjoy the benefits of ownership of the Property.

**ANSWER:** **Safeguard denies the allegations in paragraph 130.**

131.     Defendants' course of conduct is part of a pattern and practice of behavior that Defendants routinely engage in.

**ANSWER:** **Safeguard denies the allegations in paragraph 131.**

132.     As pled above, Plaintiff was severely harmed by Defendants' conduct.

**ANSWER:** **Safeguard denies the allegations in paragraph 132.**

133.     Defendants' course of conduct further implicates consumer protection concerns generally as consumers reasonably expect:

    a.  to be safe and secure in their own property;

    b.  their mortgage companies to communicate with them accurately and truthfully regarding the occupancy status of their home or any claims of abandonment/vacancy;

    c.  their mortgage companies to refrain from illegal self-help to expedite a foreclosure and bully consumers from their property;

    d.  their mortgage companies to follow state and federal law and their own guidelines;

    e.  their mortgage companies to adhere to consumer protection laws/statutes as well as investor/mortgage servicing guidelines; and

    f.  their mortgage companies will not take illegal action to expedite a

foreclosure and bully consumers from their property.

**ANSWER:** **Safeguard denies the allegations in paragraph 133.**

134. An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of Plaintiff, and was designed to take advantage of a vulnerable individual.

**ANSWER:** **Safeguard denies the allegations in paragraph 134.**

135. Punitive damages would serve the interests of Illinois consumers in that it would serve to deter similar misconduct in the future.

**ANSWER:** **Safeguard denies the allegations in paragraph 135.**

### Count VI – Conversion **(Against Safeguard)**

136. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:** **Safeguard adopts and restates its answers to paragraphs 1-136, inclusive, in Plaintiff's Complaint as its answer to the same numbered paragraphs of this count as though set forth fully herein.**

137. Conversion in Illinois is "the unauthorized deprivation of property from the person entitled to its possession." *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294 (1994).

**ANSWER:** **Paragraph 137 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

138. Conversion's essence is "the wrongful deprivation of one who has a right to the

immediate possession of the object unlawfully held." *Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 269 (1987).

**ANSWER:** **Paragraph 138 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

139. A cause of action for conversion requires "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." *Id.*

**ANSWER:** **Paragraph 139 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Safeguard neither admits nor denies those allegations but demands strict proof thereof.**

140. Safeguard, without authority or consent, assumed control, dominion, or ownership over Plaintiff's personal property as itemized above.

**ANSWER:** **Safeguard denies the allegations asserted in paragraph 140.**

141. Plaintiff had an immediate, absolute, and unconditional right to possession to her personal property.

**ANSWER:** **Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 141 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

142. Safeguard destroyed or remained in unlawful possession of Plaintiff's personal property.

**ANSWER:** **Safeguard denies the allegations asserted in paragraph 142.**

143.     Plaintiff demanded the return of her personal property from M&T Bank (Safeguard's principal) to no avail. Moreover, any additional demands for Plaintiff's personal property would be futile because Safeguard sold or otherwise disposed of Plaintiff's personal property.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 143 concerning M&T Bank and, therefore, neither admits nor denies these allegations but demands strict proof thereof. Safeguard denies the remaining allegations asserted in paragraph 143.**

144.     M&T Bank and Safeguard have made no attempt to replace or return Plaintiff's personal property or offer to pay the equivalent monetary value.

**ANSWER:     Safeguard has insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 144 and, therefore, neither admits nor denies these allegations but demands strict proof thereof.**

## COUNT VII - NEGLIGENCE (AGAINST SAFEGUARD)

145.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:     Safeguard adopts and restates its answers to paragraphs 1-145, inclusive, in Plaintiff's Complaint as its answer to the same numbered paragraphs of this count as though set forth fully herein.**

146.     Safeguard voluntarily exercised control and dominion over the Property and Plaintiff's personal property. Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the person affected by the undertaking.

**ANSWER:** **Safeguard denies the allegations in paragraph 146.**

147.     Safeguard took affirmative steps to control access to and possession of the Property by changing the locks, restricting access for a period of time, and exercising dominion and control over the personal property therein.

**ANSWER:** **Safeguard denies the allegations in paragraph 147.**

148.     Safeguard breached its duty to take reasonable steps to protect the Property and the personal property contained therein, comply with the law, or follow the practices and procedures within its own manuals and work order guidelines.

**ANSWER:** **Safeguard denies the allegations in paragraph 148.**

149.     Safeguard breached its duty by (a) failing to protect or secure the Property and its contents; (b) violating the law; (c) failing to allow its own formalized procedures, and (d) failing to use reasonable care when "securing" the subject property.

**ANSWER:** **Safeguard denies the allegations in paragraph 149.**

150.     Safeguard breached its duty to act prudently by absconding with Plaintiff's personal property and by failing to prevent any property loss after voluntarily exercising control and dominion over the Property and its contents.

**ANSWER:** **Safeguard denies the allegations in paragraph 150.**

151.     It was reasonably foreseeable that unilaterally taking control and failing to prevent the loss of Plaintiff's personal property would result in harm to Plaintiff.

**ANSWER:** **Safeguard denies the allegations in paragraph 151.**

152.     It was reasonably foreseeable that taking dominion and control of the Property and actively restricting Plaintiff's access to the Property would damage Plaintiff.

**ANSWER:**     **Safeguard denies the allegations in paragraph 152**

153.     Safeguard was aware that its actions would likely result in injury to Plaintiff, but willfully ignored its duty of reasonable care. Safeguard acted with such gross negligence as to indicate willful and wanton disregard of Plaintiff's property rights.

**ANSWER:**     **Safeguard denies the allegations in paragraph 153.**

154.     Safeguard's actions proximately caused damages to Plaintiff in the form of loss of personal property and other damages as described above.

**ANSWER:**     **Safeguard denies the allegations in paragraph 154.**

155.     As pled above, Plaintiff was severely harmed by Safeguard's conduct.

**ANSWER:**     **Safeguard denies the allegations in paragraph 155.**

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

s/ Panos T. Topalis
Panos T. Topalis – ARDC #6202025
Kevin J. Grigsby – ARDC #6332750
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 2550
Chicago, IL 60606
(312) 201-6400
pttopalis@tribler.com
kjgrigsby@tribler.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the Safeguard Properties Management, Inc.'s Answer to Plaintiffs' First Amended Complaint was served upon:

<u>**Attorney for Plaintiff**</u>
Joseph Scott Davidson, Esq.
Mohammed Omar Badwan, Esq.
Victor Thomas Metroff, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com
vmetroff@sulaimanlaw.com

<u>**Attorneys for Defendants,**</u>
<u>**Lakeview Loan Servicing, LLC**</u>
<u>**And M&T Bank Corporation**</u>
Punit Kumar Marwaha, Esq.
Troutman Sanders LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(312) 759-5949
Punit.Marwaha@troutmansanders.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 3 day of September, with proper postage prepaid.

s/      Panos T. Topalis
an Attorney

# Exhibit 3




## Safeguard



**WHEN YOU'RE NOT SECURE!**

**MAKE IT SECURE!**


### Know your confidential data!
Confidential data includes names, addresses, loan numbers and lenders, and should be protected.


### Protect your access!
Make sure that you do not share your user id's or passwords with others. This applies to your own system passwords and accounts.


### Passwords for your systems!
Use complex passwords w/alpha, numeric, special characters and a minimum of eight characters. Change them every 90 days. Use a password vault and do not write them down.


### Anti-Virus and firewall programs.
Use these programs and keep these programs updated with the latest virus definitions and firewall updates.


### Patching and Updates.
Keep your computers and mobile device operating systems up to date, and don't forget to patch those mobile devices.


### Encrypt those drives!
Keep your system secured by encrypting your hard drives on computers and laptops. Programs include Bitlocker (included with Windows OS) and True Crypt.


### Shred, Shred, Shred!
Shred any and all paper documents that contain confidential data! It is recommended to use a confetti cut shredder.


### Physical Security.
Access to your business office or work area must be protected. This includes physical access to your systems and backup media.


### Communication is sacred.
Electronic communication, including emails, text messages, voice mail, and telephone conversations must be protected. Make sure the website you are visiting uses SSL (secure sockets layer) if you are transferring confidential data, or that your email uses TLS (transport layer security) to be secure. If someone calls you and asks for information, you should first validate who they are before giving them that information.


### Use common sense.
When evaluating situations, ask yourself, "What is the worst that can happen?", and then realize that it could happen. Our job is to decrease the risk of one of those unknowns that may cause an issue.

**How to Respond:**
1. Report security breaches and data theft to Safeguard immediately.
2. Email security@safeguardproperties.com

**Exhibit 3**

## VENDOR ONBOARDING SECURITY QUESTIONNAIRE

### Vendor/Business Information

**Safeguard**
P R O P E R T I E S

| Business Name | 3C Price Inc | | Owner's Name | Corey Price |
|---|---|---|---|---|
| Owner's Signature | *Corey Price* <br> Corey Price (Mar 8, 2017) | | Date | Mar 8, 2017 |

Instructions: Please provide answers to all questions,

| Controls | | Questions | Y, N, N/A | Comments |
|---|---|---|---|---|
| 1. Physical Security | 1.1 | Are the entrances locked? | y | |
| | 1.2 | Does the vendor have a burglar alarm system? | y | |
| | 1.3 | Does the vendor have a camera system, and if so how long is the video retained for? | y | |
| | 1.4 | Is there a fire suppression system? | n | |
| 2. IT/System Security | 2.1 | Are all of your laptops, personal computers and smart phones configured to lock-out after a predetermined period of inactivity? | y | |
| | 2.2 | Do you login to your computer/laptop with a password to begin using it daily? | y | |
| | 2.3 | Will the vendor utilize Anti-Virus software on their laptops and/or PC's that will access Safeguard Properties system(s)? | y | |
| | 2.4 | Does the vendor have their laptops and or PC's (Personal Computers) configured to install operating system updates? | y | |
| | 2.5 | Do you change your devices passwords at a minimum every 90 days? | y | |
| | 2.6 | Will the vendor ensure that access is revoked to employees that have been let go? | y | |
| 3. Encryption | 3.1 | Do the vendor's systems have any special encryption technology in place and utilized for securing sensitive/confidential data? | y | |

| | | | | |
|---|---|---|---|---|
| 4. Disposal | 4.1 | When disposing of electronic media (hard drives, USB ...etc.) do you destroy the media to the extent that it is not recoverable? | y | |
| | 4.2 | When disposing laptops or PC's do you clear off all confidential information before they are destroyed? | y | |
| | 4.3 | When disposing printed media containing Safeguard Properties data, do you utilize shredding to ensure that sensitive information cannot be recovered | y | |
| | | | | |
| 5. Application, Work Flow/Hosti ng | 5.1 | Does the vendor hosts own application/website, or utilizes any 3rd party hosted software/Platform to help manage their business workflow. (Not including Safeguard Properties systems). | n | |
| | 5.2 | If so, please provide their names or web addresses. | n | |
| | | | | |
| 6. Incident Response and Managemen t | | Does the Vendor have a process or internal procedure in place to report to Safeguard Properties the Following events if or when they occur: | | |
| | 6.1 | Unauthorized access to information (electronic or hard copy), including processing errors that result in the unauthorized release of personal information? | y | |
| | 6.2 | Theft of computer equipment or components, including USB peripherals | y | |
| | 6.3 | Break-ins to vendor's office space (including data center if applicable)? | y | |
| | | | | |
| 7. Communica tion & Change Control | 7.1 | Will the vendor have a plan or a process to disseminate new rules/regulations/compliance or modification to existing once, to own staff, while ensuring staff comprehension and adherence? | y | |
| | | | | |
| 8. Confidential data | 8.1 | Is the vendor familiar with "Confidential " data and how to protect it * | y | if NOT please refer to * below |
| | 8.2 | Does the vendor take necessary precautions to secure and protect confidential data at rest and during | y | This information is also located in the "Vendor Secure Checklist" that the vendor should have received |

| | transmission? | | or will receive soon. |
|---|---|---|---|

| * Confidential data includes Names, Addresses, Loan Numbers, Mortgagor/Owners name, Vacancy status and all PII (Personally Identifiable Information) such as SS#, name and address, driver license # etc.…. PII is "information that can be used on its own or with other information to identify, contact, or locate a single person, or to identify an individual". It is advisable to Encrypt confidential data. |
|---|

## MASTER SERVICES AGREEMENT  (Form B)

**THIS MASTER SERVICES AGREEMENT ("Agreement") is entered into as of the date set** forth in the signature block below, by and between Safeguard Properties Management, LLC ("Safeguard"), located at 7887 Safeguard Circle, Valley View, Ohio 44125 and
3C Price Inc                                                                                    ("Business Name"),
located at 610 Locust Hammond In 46324                                                               .

In consideration of the mutual representation, agreements and conditions set forth herein, the parties agree as follows.

1.    **SERVICES.**  Contractor is being retained by Safeguard to perform mortgage field services ("Services"), to be set forth in a series of work orders ("Work Orders"), each of which will describe a specific property to be serviced and the type of services to be completed by a specified date.   All Services and all Work Orders are subject to the terms of this Agreement.

2.    **SCOPE OF SERVICES.**  Contractor shall select the geographic zone or zones within which it elects to perform Services. Safeguard retains the right to reject or reduce geographic territories selected by Contractor, but Safeguard has no right to unilaterally transfer Contractor to another geographic territory or to add to Contractor's geographic territory without Contractor's assent.  Contractor may nonetheless agree to accept Work Orders in geographic areas outside of the Contractor's selected zone(s), as described more fully in Section 3 below.

3.    **WORK ORDERS.**  By entering into this Agreement, Contractor accepts all Work Orders that are issued by Safeguard during the term of this Agreement, provided that such Work Orders are within the scope of the Services and within the geographic zone(s) selected by Contractor.  If any Work Order sent to Contractor fails to comply with these requirements, Contractor shall promptly notify Safeguard (within 24 hours of the Work Order being issued) of Contractor's decision not to accept the Work Order for one of these reasons.  Absent such prompt notification, the Work Order will be deemed to have been accepted by Contractor.  Acceptance of a Work Order shall obligate Contractor to complete such Work Order in accordance with its terms and in accordance with the terms of this Agreement and any applicable Reference Guide or Guidelines.   If Safeguard and Contractor have agreed to a maximum number of Work Orders that may be outstanding at any one time, the terms of this Section 3 shall also apply to that limit.

4.    **PAYMENT FOR SERVICES.**  Contractor shall be paid a fixed fee per Work Order completed.  There shall be no hourly rate, salary, or commissions.  Fixed fees per Work Order shall be negotiated between Contractor and Safeguard.  Fixed fees, once agreed upon, will not vary based upon mileage, time, or expenses incurred in completing the Work Order.   Any exceptions must be individually negotiated and agreed upon before the Work Order is accepted.

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                          Owner initials

1

5. **CONTRACTOR BEARS ALL EXPENSES.** Contractor is solely responsible for the purchase and maintenance of any and all equipment, tools, and supplies necessary for performing the Services and for completing each Work Order. Safeguard will not provide and will not reimburse Contractor for any equipment, tools, or supplies, including phones, computers, scanners, printers, fax, paper, office supplies, GPS, maps, gas, mileage, transportation, travel expenses of any kind, meals, entertainment, automobile maintenance, digital camera, camera memory card, physical work tools or hardware, internet access, data plans, text messaging, telephone charges, or email. Safeguard will provide door hangers, stickers, and certain types of envelopes, to the extent such specific items are necessary to comply with requirements imposed upon Safeguard by one or more of its clients.

6. **WORK SPACE.** Contractor is solely responsible for providing any facilities or work space needed to perform the Services or needed to submit any information required pursuant to any Work Order. Safeguard will not provide Contractor with any facilities or office space and will not reimburse Contractor for expenses related to any facilities or office space.

7. **NON-EXCLUSIVITY.** This Agreement shall not obligate either Safeguard or Contractor to work exclusively with the other with respect to any part of the Services or in any geographic area. To the contrary, it is the expectation of the parties that this Agreement is non-exclusive and that each party will enter into similar agreements or arrangements with other entities including competitors. Specifically, Contractor retains the unfettered right to perform similar Services for companies other than Safeguard, including for competitors of Safeguard, and nothing in this Agreement is intended to limit Contractor's right to compete with Safeguard directly or indirectly. Furthermore, Safeguard retains the right to issue Work Orders to, or to request Services from, any contractor, in Safeguard's sole discretion. This Agreement does not obligate Safeguard to provide any minimum number of Work Orders to Contractor at any time.

8. **PERSONNEL.** Contractor, acting in its sole discretion, shall be solely responsible for obtaining and assigning the personnel needed to fulfill the requirements of each Work Order. Contractor shall determine, in its own discretion, whether to assign such work to its employees or to subcontractors. All workers utilized by Contractor to perform any portion of the Services or fulfill any Work Order shall be referred to hereinafter as the "Personnel." With respect to all Personnel, Contractor assumes sole and complete responsibility for (a) hiring or otherwise engaging, (b) terminating, (c) compensating and maintaining pay records, (d) supervising, and (e) resolving complaints or grievances of, such Personnel. To the extent Personnel assigned by Contractor to fulfill a Work Order are Contractor's employees, Contractor shall assume sole responsibility for disciplining, testing, training, and providing performance evaluations for such Personnel. Contractor, in any event, shall be solely responsible for ensuring that Personnel are appropriately skilled, trained, and qualified to perform any Services or fulfill all aspects of the Work Order to which the Personnel are assigned. Contractor shall be solely responsible for ensuring that any and all licenses, permits, and/or certifications that may be required to perform any portion of the Services or any Work Order are in place before such work is commenced.

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                    Owner initials

In those circumstances where Contractor uses its employees to perform the Services or fulfill a Work Order, Contractor, alone, will treat the Personnel as its employees for all federal, state and local tax purposes, including (as and where applicable) the shared employer responsibility provisions of the Patient Protection and Affordable Care Act, codified at 26 U.S.C. Section 4980H. Contractor shall provide all such Personnel with a written notice that Contractor is solely responsible, as their employer, for providing them with any employer-based coverage offers for which they may qualify under the relevant provisions of the Patient Protection and Affordable Care Act, and that no other entity constitutes their employer for such purposes.

Contractor shall be solely responsible for withholding and remitting or otherwise paying, and reporting, all federal, state and local income taxes, unemployment taxes, social security taxes, and contributions of any kind, workers' compensation insurance, workers' compensation premiums, and any and all other forms of insurance, assessments, and/or taxes required to be paid over to any governmental entity as a result of any Personnel providing any portion of the Services who are (or should be treated as) Contractor's own employees.

9. **SUBCONTRACTORS AND GEOGRAPHIC INTEGRITY**. To ensure that Contractor maintains control over the quality and training of its Personnel and to ensure the effective communication of applicable standards and Work Orders, Contractor agrees that if it elects to use subcontractors, only one layer of subcontracting is permitted, absent written authorization from Safeguard. In addition, to preserve the integrity of geographic zones selected by Contractor and by Safeguard's other contractors, Contractor agrees not to serve as a subcontractor for another contractor of Safeguard within any of the same geographic zones in which Contactor is providing Services for Safeguard. Contractor shall require all of its subcontractors to agree to be bound by provisions substantially identical to those included in this Agreement, specifically including those relating to the indemnification of Safeguard and its affiliates, treatment of Confidential Information, liens, and background checks. The retention of subcontractors by Contractor shall not relieve Contractor of any of its obligations under this Agreement. Work Orders accepted by Contractor remain the primary responsibility of Contractor, regardless of whom Contractor decides to engage to perform the Services.

10. **SUPERVISION.** Contractor is responsible for supervising the work of its Personnel to the extent that Contractor deems appropriate. Safeguard will make a company liaison available for questions, but performance of the Services is unsupervised by Safeguard.

11. **INDEPENDENT CONTRACTOR.** Neither Contractor nor any of the Personnel supplied by Contractor are employees of Safeguard. Rather, Contractor is an independent contractor of Safeguard. Nothing in this Agreement or in any Work Order shall be construed to create an employer/employee relationship, joint venture, or partnership agreement between Safeguard and Contractor, or between Safeguard and any of the Personnel. Contractor acknowledges that it is not authorized to make any representation, commitment, or contract on behalf of Safeguard or any of its affiliates. Contractor and all of its Personnel are prohibited from holding themselves out as employees of Safeguard in any form

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                    Owner initials

3

whatsoever. Contractor and its Personnel are prohibited from using any Safeguard logo, business card, badge, clothing, email address, business materials, or other documentation that would lead a reasonable person to infer that Contractor or any of its Personnel are employees or representatives of Safeguard, except for those items provided by Safeguard referenced above in Section 5. Neither Contractor nor any of its Personnel are eligible to participate in any employee benefit programs of Safeguard whatsoever, nor shall they be deemed "leased employees" as that term is defined in Section 414(n)(2) of the Internal Revenue Code; and Contractor (on behalf of itself and its Personnel) hereby waives any claim that it or any of its Personnel may be entitled to any employee benefits of any kind. Contractor shall be solely responsible for providing any and all employee benefits to Contractor's employees, to the extent applicable.

12.     **PERFORMANCE OF SERVICES.**  Contractor shall use its discretion to determine whom to assign to perform the Services for each Work Order. All portions of the Services, including all Work Orders, shall be completed in a timely, workmanlike, and professional manner, consistent with industry standards and any applicable requirements and laws. Contractor shall be solely responsible for ensuring that any and all licenses, permits, and/or certifications that may be required to perform any portion of the Services or any Work Order are in place before such work is commenced, regardless of whether the Services are being performed by the Contractor or its Personnel.

13.     **TIMING.**  Contractor shall use its discretion as to when to perform the work associated with any particular Work Order but shall complete each Work Order, including submitting all required information, no later than the deadline specified in each Work Order. As to each Work Order, time is of the essence.

14.     **INITIAL TERM AND RENEWAL.**  This Agreement shall have an initial term of one year. At the conclusion of the initial one-year term and any additional years, this Agreement shall automatically renew for successive one-year terms, unless either party provides written or electronic notice before renewal of such party's intent not to renew. To be effective, notice of a party's intent not to renew must be provided at least thirty days before the conclusion of the then-current term.

15.     **EARLY TERMINATION.**  This Agreement may be terminated before the conclusion of a one-year term by either party only in the event of a breach of this Agreement by the other party, except that Contractor shall have the additional right to terminate this Agreement for certain limited reasons and within certain limited time periods as are specifically described elsewhere in this Agreement. Before a party may terminate because of the other party's breach, the non-breaching party must provide written or electronic notice to the allegedly breaching party that details the alleged breach, including time, place, and manner of breach, and providing the allegedly breaching party with a fourteen-day opportunity to cure the breach. This Agreement may be terminated for breach only if the allegedly breaching party has not cured the breach within the fourteen-day period. Notice of termination must be provided to the allegedly breaching party in writing or electronically. Termination of this Agreement for breach shall not release the non-breaching party from fulfilling any

_CP_
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                Owner initials

4

responsibility or liability that arises prior to the effective date of termination. For example, if Contractor terminated the contract because of a material breach by Safeguard, Contractor is still contractually responsible for completing any Work Orders that are outstanding as of the date of termination. The effect of termination shall be that no further Work Orders would be issued, but Contractor would still be responsible for completing all pending Work Orders and, until all such pending Work Orders are no longer pending, all applicable terms of this Agreement shall apply and be in force.

16.     **SURVIVAL AFTER TERMINATION.**  The following sections of this Agreement shall survive any termination of this Agreement and shall remain in effect thereafter, regardless of whether this Agreement is terminated naturally at the end of a one-year term or terminated early:  Sections 11, 15, 22, 23, 24, 25, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37.

17.     **COMPLIANCE WITH GUIDELINES AND REFERENCE GUIDE.**     Contractor acknowledges that properties at which Services are to be performed are not owned by Safeguard but rather are properties that Safeguard has been retained to protect and/or preserve, in accordance with guidelines and requirements imposed by clients, mortgagees, investors, and/or insurers, including for example the United States Department of Housing and Urban Development (HUD), the Federal Housing Administration (FHA), the Veterans Administration (VA), the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), and other governmental or private entities.  To ensure that these guidelines and requirements are fulfilled, Safeguard has compiled a reference guide ("Reference Guide") for the purpose of communicating such guidelines and requirements to Contractor and incorporating them into each Work Order.  The Reference Guide also describes the procedure by which Safeguard transmits Work Orders to Contractor and by which Contractor shall submit results to Safeguard upon completion of each Work Order.  Other general information is contained in the Reference Guide as well.  Contractor shall be responsible for ensuring that the guidelines set forth in the Reference Guide are followed with respect to each Work Order.  Because the guidelines and requirements imposed by the various governmental and private entities change from time to time, the Reference Guide will be updated as appropriate, and Contractor accepts responsibility for keeping apprised of the updates and for ensuring that all Personnel performing Services for Contractor under any Work Order are informed of the contents of the most current materials.  Updates to the Reference Guide are effective upon Safeguard's posting to the Vendor Resource Center.  Contractor retains the right to reject updates to the Reference Guide by terminating this Agreement, which termination must be communicated in writing or electronically to Safeguard within 45 days of the posted change and which termination shall be effective immediately upon such notice except that Contractor shall remain responsible for and liable for completing any open Work Orders.

18.     **COMPLIANCE WITH APPLICABLE LAWS AND GUIDELINES.**  Contractor covenants that at all times it shall comply with all applicable federal, state, local, and other laws and regulations (as amended from time to time) in performing the Services and shall not violate any applicable federal, state and local laws, rules, ordinances and regulations concerning, without limitation, fair lending and

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                    Owner initials

5

housing, utility shutoff and connection, water meters, removal and storage of motor vehicles or watercraft, vacant, occupied, or abandoned property, evictions, safety and health (including, for example, the Occupational Health and Safety Act and any applicable state equivalents), and storage of personal property. Contractor shall follow all applicable laws with respect to all Personnel. Contractor will not engage in unlawful discrimination based on race, color, national origin, sex, age, religion, disability, genetic information, or any other criteria prohibited by applicable law, in any employment or staffing decision related to the provision of Services under this Agreement. Contractor shall provide, at Contractor's sole expense, any reasonable accommodations needed to permit any of the Personnel to perform the essential functions of any assignment. Contractor shall be solely responsible for providing Personnel with any type of leave (e.g., medical leave, sick leave, etc.) that any of the Personnel may be entitled to receive under any applicable law. Contractor is solely responsible for ensuring compliance with the Fair Labor Standards Act and all other applicable federal, state, and local wage and hour laws, including all laws relating to payment of overtime, minimum wage, child labor laws, and meal and rest breaks. Contractor shall be solely responsible for ensuring that all Personnel are legally permitted to work in the United States. If Contractor in good faith believes that any portion of any Work Order violates any applicable law, rule, or regulation, Contractor shall notify the Vendor Contact Center.

19.     **WORKERS COMPENSATION**.  Contractor is solely responsible for maintaining workers compensation coverage, including paying all applicable premiums or taxes, sufficient to cover any injury to Personnel while working on any matter for Safeguard. Contractor accepts sole responsibility for any compensable injury to Personnel while working on any matter for Safeguard. Contractor agrees to indemnify and hold Safeguard and its clients harmless in the event of any negligence claim or workers compensation claim or other claim by any of the Personnel against Safeguard and/or any of its clients. Contractor shall waive any subrogation rights against Safeguard and/or any of its clients for workers compensation benefits and shall obtain a waiver from any insurance carriers with whom Contractor carries workers compensation insurance releasing their subrogation rights against Safeguard and/or any of its clients.

20.     **INSURANCE**.  Throughout the term of the Agreement, Contractor shall maintain, at its own expense, insurance coverage as described in the most current Reference Guide. Contractor acknowledges that insurance requirements may change from time to time. If insurance requirements change in a manner unsatisfactory to Contractor, then Contractor retains the right to reject any such changes by terminating this Agreement, which termination must be communicated in writing or electronically to Safeguard within 45 days of the posted change and which termination shall be effective immediately upon such notice except that Contractor shall remain responsible for and liable for completing any open Work Orders.

21.     **BACKGROUND CHECKS**.  Contractor shall comply with any background check requirements set forth in the Reference Guide and any applicable laws requiring consent for disclosure of background check information to Safeguard or a related entity. Contractor acknowledges that

_CP_
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                    Owner initials

background check requirements may change from time to time. If background check requirements change in a manner unsatisfactory to Contractor, then Contractor retains the right to reject any such changes by terminating this Agreement, which termination must be communicated in writing or electronically to Safeguard within 45 days of the posted change and which termination shall be effective immediately upon such notice except that Contractor shall remain responsible for and liable for completing any open Work Orders.

22.     **INDEMNITY.**  Contractor assumes sole and complete responsibility for any and all acts and omissions of any Personnel engaged in the performance of Services or the fulfillment of Work Orders. Contractor agrees to save, reimburse, indemnify and hold harmless Safeguard, its affiliates, its clients, and all of their respective partners, officers, employees, representatives  and agents (collectively, "Indemnitees") from and against any and all claims, allegations, damages, liability, penalties, fees, assessments, charges, attorneys' fees, costs, and expenses (collectively, "Claims"), relating to or stemming from (a) any failure or alleged failure by Contractor or by any Personnel to satisfactorily fulfill all of Contractor's obligations under this Agreement; (b) any act, omission, or negligence by Contractor or any Personnel, or by Contractor's agents, representatives, or subcontractors, which relate to the Services or any Work Order, including the performance or non-performance thereof; (c) any property damage or bodily injury (including death, no matter when death occurs) caused by or related to the negligence, act, or omission of Contractor or any Personnel; (d) any finding, allegation, or Claim that any Personnel are employees of Safeguard for any purpose or under any applicable statutory or regulatory scheme or legal standard, including, for example, state workers compensation or unemployment laws, the Patient Protection and Affordable Care Act, the Employee Retirement Income Security Act, the National Labor Relations Act, the Fair Labor Standards Act, or any vicarious liability or respondeat superior doctrine; (e) any failure or alleged failure by Contractor or any Personnel to adhere to any applicable law, rule, or regulation of any governing body having jurisdiction over the Services or a Work Order; (f) any reasonable steps taken by Safeguard in an effort to remove any lien filed by any Personnel or to prevent any threatened lien(s) from being filed by any Personnel (reasonable steps for these purposes shall include any expenses incurred by Safeguard as a result of Safeguard making a payment to Personnel for purposes of removing a lien or preventing the filing of a lien); (g) any Claim against any of the Indemnitees based upon facts or circumstances over which Contractor has assumed responsibility through this Agreement; or (h) any Claim against any of the Indemnitees by any Personnel.

23.     **DAMAGES.**  Contractor understands and acknowledges that Safeguard may suffer significant damages in the event Contractor does not perform and complete its obligations under this Agreement and under any Work Order in a timely and workmanlike manner.  In the event Contractor fails to fulfill any obligation under this Agreement or fails to timely and properly complete any Work Order, then Safeguard may, at its sole discretion (a) recover its damages from Contractor by deducting such sums from future payments; or (b) engage, at Contractor's sole expense, another qualified contractor to complete the Services that were being performed by Contractor; or (c) both.  The term "damages" in this section shall include, without limitation, monies withheld from, or requested to be reimbursed by, Safeguard at the request of its clients for Work Orders issued to Contractor; penalties imposed by

_CP_
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                           Owner initials

7

federal, state, or local authorities for work performed by Contractor or for Contractor's negligent failure to perform such work; and any lost revenues that Safeguard would have been entitled to receive had Contractor timely and properly performed the work in accordance with this Agreement and any applicable Work Order.

24.     **CONTRACTOR'S PAYMENTS.**  Contractor shall make, and shall be solely responsible for making, full payment to any and all of its employees, agents, servants, subcontractors, representatives, Personnel, material men, and suppliers with respect to any Services or any Work Order issued to Contractor or any work performed under this Agreement.

25.     **NO FILING OF LIENS**.  Contractor agrees to, and hereby does waive any and all rights under any and all applicable laws to file liens of any kind whatsoever against any property on which Contractor or its Personnel have performed work, for nonpayment of services or any other reason whatsoever.  Contractor further agrees to take no action of any kind which would affect in any way the chain of title to any such property, including but not limited to the filing of any liens, lis pendens notices, civil actions, or the taking of any action which clouds or has the effect of clouding title to such properties, or which interferes with or affects in any manner Safeguard's clients' ability to transfer title to the subject property.  Contractor is solely responsible for ensuring that its Personnel are aware of and abide by the requirements of this section, and Contractor is responsible for resolving with its Personnel any disputes regarding non-payment by Contractor for services by its Personnel.  To the extent any such payment disputes are escalated by Personnel to Safeguard and liens have either been placed or are threatened, Safeguard reserves the right to pay such Personnel directly and chargeback such amount to Contractor if, after notice to Contractor, Contractor is non-responsive to Safeguard and Safeguard has made a preliminary determination that such Personnel's claim for payment appears valid.  **Any portion of this section that is contrary to law in any particular state or locality shall be disregarded and shall not be considered part of this Agreement as to Work Orders in that state or locality only, but shall remain in effect in all states and localities where lawful.**

26.     **ENVIRONMENTAL COMPLIANCE**.  In performing any Services set forth in a Work Order, Contractor bears the sole responsibility for determining the manner and nature of removal of all debris, trash, hazardous materials, personal property and any and all other materials from properties pursuant to any applicable Work Order.  Contractor shall perform all material removal and disposal in compliance with all applicable laws.

27.     **CONFIDENTIAL INFORMATION AND PRACTICES**.
(a)     Except to the extent required for completing a Work Order or for complying with applicable law, Contractor shall not do any of the following, and Contractor shall ensure that its Personnel do not do any of the following, at any time:
        (i)     Disclose any personal or private information about any homeowner, tenant, or mortgagee learned in the course of performing any of the Services.  For purposes of this section, personal or private information includes, but is not limited to, identifying information about any

_CP_
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                          Owner initials

homeowner, tenant or mortgagee; contact information for any homeowner, tenant or mortgagee; default or payment status on any loan; any information about loan status, payment status, loan number, or the mortgagor or mortgagee; and information about the personal property contained inside or on the grounds of any real property that is the subject of any Work Order.

(ii)     Represent that he/she is authorized to act on behalf of Safeguard or Safeguard's client, or is an agent or representative of Safeguard or its client, other than in response to a direct inquiry while carrying out Services pursuant to a Work Order and, in such case, only to the limited extent necessary to disclose that he/she is performing a Work Order for Safeguard (with the exception that this restriction does not apply to a court ordered, police or government inquiry of Contractor).

(iii)    Disclose, share, reproduce, publish, or post any nonpublic materials that Safeguard provides to or makes available to Contractor for purposes relating to the Services, including but not limited to any Work Orders, Reference Guides, videos, policies, memorandum, procedures or guidelines.

(iv)     Issue or release any articles, advertising, publicity, website disclosure, blog, social media post, or other public notice(s), whether written or oral or electronic, relating to this Agreement, the facts and circumstances pertaining hereto, or mentioning or implying the name of Safeguard, without Safeguard's prior written consent, which consent can be withheld for any reason.

(b)     Contractor and its Personnel shall take all reasonable and appropriate steps to ensure that all information security policies are followed, as such policies are set forth and updated in any Reference Guide or other materials provided by Safeguard.  Contractors and its Personnel shall ensure that all logins and passwords are maintained as secure and are not disclosed or made available to anyone other than those specifically authorized to use them.

(c)     Contractor shall notify Safeguard as promptly as possible, but in no event later than 24 hours, after any violation by Contractor or by any of the Personnel of any of the requirements set forth in this Section 27.  Such notification shall be made to the Vendor Contact Center.

28.     **CHARGEBACKS**.  Contractor expressly authorizes Safeguard to make deductions from future payments to Contractor for purposes of chargebacks, which may be assessed in the sole discretion of Safeguard, to adjust for losses to Safeguard or for nonpayment to Safeguard that occurs as a result of any: (a) failure by Contractor (including its Personnel) to properly complete a Work Order or any portion of the Services; (b) failure by Contractor (including its Personnel) to comply with the requirements of this Agreement; (c) damage done to property by Contractor or its Personnel in the course of performing Services; (d) payment to Personnel pursuant to Section 25; or (e) complaint (as further described in Section 30 below) for which Safeguard has determined, in its discretion after proper investigation, that the issue complained of was caused by Contractor or its Personnel. Contractor retains the right to contest the appropriateness of any chargeback through the established dispute process.

29.     **ETHICS HOTLINE.**  Contractor shall promptly report suspected ethical or compliance violations directly to Safeguard's Ethics Hotline, accessible 24 hours a day, at 1-855-271-2686, or online at safeguardproperties.ethicspoint.com.

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                    Owner initials

30.     **CONSUMER COMPLAINTS OR PROPERTY DAMAGE.**  In the event that Contractor or its Personnel receives a complaint from a mortgagor, tenant, neighbor or other person at the property during the course of performing Services, Contractor or its Personnel shall provide the person Safeguard's toll-free customer service number and inform the person that he/she may report a complaint via the toll-free number.  Any interaction with any person during the course of performing Services that is threatening or confrontational shall be immediately reported by the Contractor or its Personnel to the Vendor Contact Center.  Additionally, Contractor or its Personnel shall immediately report to the Vendor Contact Center any damage done by Contractor or its Personnel to any property in the course of performing Services.  If Safeguard directly receives a complaint regarding Services and, in the course of its investigation, requests information from the Contractor regarding such complaint, the Contractor shall respond to such request within 24 hours, and in the manner requested, to allow Safeguard to provide a timely and thorough response to complainant and its client.  Failure to timely respond to a request for information may result in an unfavorable determination against the Contractor and may result in a chargeback.  In the event that Safeguard is contacted by local authorities or a regulator agency in connection with any investigation and/or complaint, Safeguard may provide Contractor's contact information.

31.     **CHOICE OF LAW AND FORUM SELECTION.**  Except as provided in Section 32 relating to arbitration and the applicability of the Federal Arbitration Act, this Agreement shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to its conflicts of laws principles.  If any dispute is excluded from arbitration pursuant to Section 32, or if Section 32 is deemed to be unenforceable for any reason, any lawsuit filed to resolve the dispute shall be filed in a state or federal court in Cuyahoga County, Ohio.

32.     **ARBITRATION.**  Contractor and Safeguard agree that arbitration shall be the exclusive, final, and binding means for resolving any dispute between Safeguard and Contractor (including its Personnel) that is related to any of the subjects in this Agreement, the Services, any Work Order, any matter related to the relationship between Safeguard and Contractor, or any dealings between Safeguard and Contractor (including Contractor's Personnel) that cannot be resolved internally between the parties.  This agreement to arbitrate shall be interpreted broadly and is intended also to include all claims related to the construction or interpretation of this provision or this Agreement and any claims that may arise between Safeguard and Contractor (including its Personnel) after the termination of this Agreement.   Arbitration shall be conducted under the Commercial Dispute Resolution Rules of the American Arbitration Association ("AAA"), as amended, except as modified in this clause or by subsequent agreement of the parties.  The parties acknowledge that their dealings are in the course of interstate commerce.  The parties agree to the applicability of the Federal Arbitration Act ("FAA") and hereby waive any argument that the FAA is not applicable.  **By agreeing to these procedures, the parties waive the right to trial by jury.  The parties may bring claims against one another only in an individual capacity and not as a plaintiff, class representative, or member of any purported class, collective, representative, or aggregate proceeding.  The parties expressly waive the right to bring, or participate in, any claim as part of any class, collective, representative, or aggregate proceeding.   The arbitrator shall not consolidate proceedings**

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                    Owner initials

10

**involving more than one entity's claims and shall not authorize or preside over any form of a class, collective, representative, or aggregate proceeding.** The arbitration shall take place in Cuyahoga County, Ohio, before a single neutral arbitrator who shall be a lawyer. All arbitration proceedings shall be confidential, and neither party shall disclose any information about the evidence produced by either party in the arbitration proceeding, except as necessary in the course of a judicial, regulatory, or arbitration proceeding, or as may be demanded by governmental authority. Before making any disclosure required under the preceding sentence, the disclosing party shall give the other party reasonable advance written notice of the intended disclosure and an opportunity to prevent disclosure. Each party shall have the right to take up to three depositions of fact witnesses and may also take the depositions of any expert witnesses. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. Only evidence that is directly related to the claims and issues may be obtained in discovery. The arbitrator shall have the authority to consider and rule upon motions to dismiss, motions for summary judgment, and motions to compel discovery. The arbitrator shall have the authority to award any remedy or relief that a state or federal court in Cuyahoga County, Ohio could grant in conformity with applicable law based on claims actually made in the arbitration. Any arbitration award shall be accompanied by a written statement containing a summary of the issues in controversy, a description of the award, and an explanation for the reasons for the award. The arbitrator's judgment shall be final and binding, and judgment may be entered upon such award by any court. This arbitration provision shall survive termination of this Agreement. If any part of this arbitration clause is deemed by a court of competent jurisdiction to be invalid, illegal, or unenforceable, such a determination shall not affect the legality, validity, or enforceability of the remaining parts of this arbitration clause and procedure; and the illegal, invalid, or unenforceable part shall be disregarded. Notwithstanding the foregoing, this Section 32 shall not apply to the following types of actions, which may be brought and litigated in a court: (a) efforts by Safeguard to remove a lien filed against a property, (b) claims involving allegations of imminent harm for which preliminary injunctive relief or a temporary restraining order is being sought (but, after preliminary or temporary relief is granted or denied by a court, the parties agree that the matter must then be referred to arbitration, and any final determination on the merits can only be determined in arbitration); and (c) any cross-claim or third party claim that Safeguard may assert against Contractor or its Personnel in a lawsuit that was not filed by Safeguard but instead had been filed in court by a party other than Contractor, against Safeguard or its clients. For purposes of clarification, the intent of subpart (c) is that if Safeguard is already in court as a defendant in litigation it did not initiate and if Safeguard believes that Contractor or its Personnel are partially or wholly responsible, Safeguard may bring Contractor or Personnel into such pending court action and the court may determine the merits of such cross-claims or third party claims, rather than having the related matter decided in an arbitration proceeding that is separate from the main litigation.

33.     **NOTICE**. Any notice to Safeguard under this Agreement shall be made either (a) by mailing such notice via certified mail or reliable overnight commercial carrier to Vendor Assurance at Safeguard Properties, 7887 Safeguard Circle, Valley View, Ohio 44125, or (b) by email to vendor.management@safeguardproperties.com.


_CP_
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                                 Owner initials

11

34.    **ENTIRE AGREEMENT**.  This Agreement, together with the Work Order(s), applicable pricing agreement, and applicable Reference Guide(s), investor guidelines and requirements, policy and procedure updates, memorandum or other forms of communications regarding policies and procedure updates (as such reference materials may be communicated and updated from time to time in Safeguard's sole discretion), sets forth the entire understanding of the parties on the specific subjects addressed herein and supersedes all prior written and oral communications regarding these subjects. This Agreement may be modified or amended only in a writing signed by a duly authorized representative of each party.

35.    **WAIVER**. No failure to exercise, or delay in exercising, on the part of either party, any right, power or privilege hereunder shall operate as a waiver therefore nor will any single or partial exercise of any right, power or privilege hereunder preclude the further exercise of the same right or the exercise of any other right hereunder.

36.    **SEVERABILITY**. If any part of this Agreement is adjudged by an arbitrator or a court of competent jurisdiction to be invalid, such judgment shall not affect or nullify the remainder of this Agreement, which shall remain in full force and effect.

37.    **AUDIT**. Throughout the term of this Agreement and for two (2) years thereafter, Safeguard shall be permitted to audit Contractor at any time to ensure that Contractor is (or was) in compliance with all of its obligations under this Agreement. Contractor agrees to make available for purposes of any such audit all of Contractor's data, files and records, and that such materials may be inspected, audited and copied by Safeguard, its duly authorized agents, representatives or employees or by federal or state agencies having jurisdiction over Safeguard, at such reasonable times and intervals and after providing Contractor with reasonable notice.  Contractor shall cooperate fully with any such audit request and shall provide any requested paperwork or proof within three days of any reasonable request by Safeguard.

38.    **COUNTERPARTS.**  This Agreement may be executed in several counterparts, each of which when so executed shall be deemed an original.

**[Signatures on Following Page]**

*CP*
CP

Owner initials

Owner initials (Additional owner, if any)

Owner initials   (Additional owner, if any)                         Owner initials

12

**CONTRACTOR**

Business Name:

3C Price Inc

Owner's Signature:

*Corey Price*
Corey Price (Mar 8, 2017)

Title:  Owner

Additional Owner Signature (if any):

Title:                                    Title:

Title:

**SAFEGUARD PROPERTIES MANAGEMENT, LLC**

By: Joe Iafigliola

Signature: *Joe Iafigliola*

Title:  VP Vendor Management

**[MASTER SERVICES AGREEMENT SIGNATURE PAGE]**

13



# Pricing Agreement Form

REP: EAI

| BUSINESS INFORMATION | | |
|---|---|---|

**\*Business Name:**  3C Price Inc

List ALL Owner(s):  Corey Price

Address:  610 Locust

City:  Hammond

State:  In

Zip Code:  46324

**\*\*If mail and/or supplies should be sent to a different address please list below:**

Address:

City:

State:

Zip Code:

To register for EIN http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Apply-for-an-Employer-Identification-Number-(EIN)-Online

EIN:  Redacted

**\*EIN only, SS# not acceptable**

BusinessEmail Address:  Priceisrightepp@gamil.com        Office Number:  2195543992

*All correspondence between SPI and Vendor will be done using this email*

*Owner 1* Email Address :  Priceisrightepp@gmail.com
*May be same as above*
 *Where compliance documents will be sent for electronic signature(s) if/when necessary*

*Owner 2* Email Address:
*May be same as above*
 *Where compliance documents will be sent for electronic signature(s) if/when necessary*

**Contact Information:** All SPI vendors must have and maintain a reliable and responsive communication system.

| Office Contact Name: | Office Contact Number: | Field Contact Name: | Field Contact Number: |
|---|---|---|---|
| Office | 2195543992 | Corey | 7734064004 |

**Insurance Information:** Proof of insurance from one of the three approved brokers must be provided prior to commencement of work. Refer to form A in qualification package.

**Coverage:** Unless an express, written, exception is provided Vendors are required to cover and accept all work orders in the zones in which they are present.

1

☑ Property Preservation or REO Fee Schedule:

**Vendor Code will be** 3CPPPP

Discount: 30%
Trip Charge (If applicable) $ 25.00      minus 30      % discount

Owner Initial(s): CP

Grass Orders *Tiny lots (less than 100 square feet of grass) are paid at $25 flat*
**Safeguard Properties, LLC does *not* pay for photos, 2nd bids or bid estimates provided by its vendors.**

---

☐ Field Inspection Fee Schedule:

**Vendor Code will be**

FI-DFI-FIB - Field Inspection:      $
FINT - Interior Inspection:      $
FINTR – Rush Interior Inspection:      $
FIR-SALE - Rush Inspection:      $
REOINT – Quality Control Interior:      $
IL - Insurance Loss Inspection:      $
WFRINT – Wells Fargo Interior:      $
RWFINT – Rush Wells Fargo Interior:      $

Owner Initial(s):

**Inspections Technology Information:** Use of the Safeguard mobile application is a requirement in order to complete inspections, and is required for all order types.

**I agree that I/my subcontractors will adhere and abide by Safeguard's mobile compliance requirements to submit the completed order information and photos. I understand that failure to meet these standards at any time may result in a decrease in volume, removal of work, and/or my services being discontinued entirely.**

☐ Grass Cut Service Level and Fee:

**Vendor Code will be**

Amount per property:

$ _____ at a Discount _____ % unless bids apply

Owner Initial(s):

**\*Tiny lots (less than 100 square feet of grass) are paid at $25 flat\*"**

Weather Delay, Grass Cuts: Billing a trip charge and updating an order with "cannot complete due to weather delay" is unacceptable. You must send a status update on vendor web advising that there is a weather delay, and then complete the order when the weather permits. Always complete landscape and grass cut work if able to do so.

\*All lawn maintenance orders must be completed within 5 days of the order date\*
**\*\*All P&P work per bid orders are to be completed at a 35% discount on Grass and Snow Removal orders\*\***

---

☑ Snow Removal Service Level and Fee:

**Vendor Code will be** 3CPSNW

Amount per property:

$ 30 _____ at a Discount 0 _____ % unless bids apply

Owner Initial(s): CP

Services included:
- Remove snow from walkways, sidewalks, driveways, and entryways to the front door.
- Anti-slipping agent must be applied to all plowed areas (i.e. salt)
- Snow should not be piled up in front of entrances to the property

Trip charge, Snow Removals ONLY: Trip charges will only be provided if a broker orders snow removal and the property does not need to be plowed. Trip Charge: $18.75

\*Safeguard Properties, LLC does *not* pay for photos, 2nd bids or bid estimates provided by its' vendors.\*
\*\*All required photos must be included with the update submitted on the Vendor Web for payment\*\*
\*\*\*All P&P work per bid orders are to be completed at a 35% discount on Grass and Snow Removal orders\*\*\*

3

☐ Estimates & Repairs Fee Schedule:

**Vendor Code will be**

Discount:

Trip Charge (If applicable)  $        minus        % discount

Owner Initial(s):

*Safeguard Properties, LLC does *not* pay for photos, 2nd bids or bid estimates provided by its vendors.*

---

☐ Evictions Fee Schedule:

**Vendor Code will be**

Discount:

Trip Charge (If applicable)  $        minus        % discount

Owner Initial(s):

*Safeguard Properties, LLC does *not* pay for photos, 2nd bids or bid estimates provided by its vendors.*

## Direct Deposit

Safeguard Properties has been working with JP Morgan Chase Bank and their partner, No Check Payment Service, to develop a program to send electronic payments to our contractors via ACH/Direct Deposit. We have developed a plan to eliminate paper checks and avoid any delays or lost payments caused by the post office.  We truly believe that both of our companies will greatly benefit from this service. All, vendor, payments will be made in this fashion. You will, upon hire, receive information RE: this program. This program takes some time to get into effect, securely. Please respond to the Accounting department as soon as you are contacted, so to not delay your first payments.

I will be paid the above amounts on the condition that: (i) I comply with all insurance coverage requirements as advised by Safeguard, either verbally or in writing, and must produce evidence of the required coverage upon demand; (ii) all work conducted pursuant will be in accordance with all applicable terms and conditions set forth by

Safeguard, either verbally or in writing; (iii) I conduct all work on behalf of Safeguard in compliance with all applicable local, state, and federal laws and guidelines. In addition, I understand that all fees and amounts referenced herein are subject to change, without notice, by Safeguard; provided that all such changes shall be set forth on the work orders I receive, or through any new Pay Verification form applicable to me.

By commencing performance, I acknowledge and agree that any disputes arising from any aspect of the work performed, or that should have been performed, on behalf of Safeguard shall be subject to the jurisdiction of the State of Ohio. Proper venue shall be Cuyahoga County, Ohio

I Corey Price                              hereby acknowledge that I have read and fully understand Safeguard Properties, LLC. Security Awareness Training, and agree to comply with all guidelines.

*Corey Price*
Corey Price (Mar 6, 2017)

**Additional Owners signatures, if needed**

I                                        hereby acknowledge that I have read and fully understand Safeguard Properties, LLC. Security Awareness Training, and agree to comply with all guidelines.

I                                        hereby acknowledge that I have read and fully understand Safeguard Properties, LLC. Security Awareness Training, and agree to comply with all guidelines.

I                                        hereby acknowledge that I have read and fully understand Safeguard Properties, LLC. Security Awareness Training, and agree to comply with all guidelines.

# Exhibit 2A-C

(https://inbiz.in.gov)



Print Entity Details

## Business Details

| | |
|---|---|
| Business Name: | **3C PRICE INC.** |
| Entity Type: | **Domestic For-Profit Corporation** |
| Creation Date: | **07/05/2016** |
| Principal Office Address: | **610 Locust St, Hammond, IN, 46324, USA** |
| Jurisdiction of Formation: | **Indiana** |

| | |
|---|---|
| Business ID: | **201607051148448** |
| Business Status: | **Active** |
| Inactive Date: | |
| Expiration Date: | **Perpetual** |
| Business Entity Report Due Date: | **07/31/2022** |
| Years Due: | |

## Incorporators Information

| Title | Name | Address |
|---|---|---|
| Incorporator | Corey Price | 4834 Elm Ave, Hammond, IN, 46327, USA |

**Page 1 of 1, records 1 to 1 of 1**

## Governing Person Information

| Title | Name | Address |
|---|---|---|
| CEO | Corey Price | 610 Locust St, Hammond, IN, 46324, USA |

**Page 1 of 1, records 1 to 1 of 1**

## Registered Agent Information

Type: **Individual**

Name: **Josalan Poole**

Address: **610 Locust St, Hammond, IN, 46324, USA**

| Back | Return to Search | Filing History | Name History | Assumed Name History |
|---|---|---|---|---|
| | | | | Certified Copies Request |

**Exhibit 2A**



**79 JOTA**

TRK# 0201

**2833 9201 3468**

ORIGIN ID:CHIA (312) 201-6400
HELEN WHITE
225 WEST WASHINGTON STREET
SUITE 2550
CHICAGO, IL 60606
UNITED STATES US

TO JOSALAN POOLE
3C PRICE, INC.
610 LOCUST ST

(312) 201-6431
INV
PO

HAMMOND IN 46324

REF: 486.26975

DEPT:

SHIP DATE: 07SEP21
ACTWGT: 0.50 LB
CAD: 112121562/INET14400

BILL SENDER

**WED - 08 SEP 8:00P**
**STANDARD OVERNIGHT**

IN-US

46324
RES
**ORD**

FedEx
Express

J212021070901urr

56DJ3/169A/FE4A

**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**Exhibit 2B**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, September 8, 2021 4:10 PM |
| **To:** | Helen White |
| **Subject:** | FedEx Shipment 283392013468: Your package has been delivered |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |



# Hi. Your package was delivered Wed, 09/08/2021 at 4:09pm.



Delivered to 610 LOCUST ST, HAMMOND, IN 46324

**OBTAIN PROOF OF DELIVERY**

**TRACKING NUMBER** 283392013468

**FROM** Helen White
225 West Washington Street
Suite 2550
Chicago, IL, US, 60606

**TO** 3C Price, Inc.
Josalan Poole

1

**Exhibit 2C**

610 LOCUST ST

HAMMOND, IN, US, 46324

| | |
|---|---|
| **REFERENCE** | 486.26875 |
| **SHIPPER REFERENCE** | 486.26875 |
| **SHIP DATE** | Tue 9/07/2021 07:36 PM |
| **DELIVERED TO** | Residence |
| **PACKAGING TYPE** | FedEx Envelope |
| **ORIGIN** | Chicago, IL, US, 60606 |
| **DESTINATION** | HAMMOND, IN, US, 46324 |
| **SPECIAL HANDLING** | Residential Delivery |
| **NUMBER OF PIECES** | 1 |
| **TOTAL SHIPMENT WEIGHT** | 0.50 LB |
| **SERVICE TYPE** | FedEx Standard Overnight |

# Download the FedEx® Mobile app

Get the flexibility you need to create shipments and request to customize your deliveries through the app.

**LEARN MORE**

**FOLLOW FEDEX**

      

**Exhibit 2C**

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 4:10 PM CDT 09/08/2021.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2021 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

**Exhibit 2C**

# Exhibit 3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SEMBACH, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-00752 |
| v. | ) | |
| | ) | Honorable Judge Andrea R. Wood |
| | ) | |
| LAKEVIEW LOAN SERVICING, LLC | ) | |
| M&T BANK, and SAFEGUARD | ) | |
| PROPERTIES MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF PANOS T. TOPALIS

Panos T. Topalis, being first duly sworn on oath, deposes and states that, if called, I could and would competently testify to the following facts:

1.     3C Price, the defaulting party, is not an infant, in the military, or an incompetent person as 3C Price is a for-profit corporation incorporated under the laws of the state of Indiana.

2.     3C Price has failed to plead or otherwise defend the third-party action filed against it by Safeguard Properties Management, LLC in the above-captioned matter.

3.     3C Price has been properly served with Safeguard's Third-Party Complaint in this action as it was delivered to 3C Price's Registered Agent via certified mail on September 8, 2021. A copy of this Motion for Entry of Default is also being served upon the Registered Agent of 3C Price, Inc., at the same address as the original waiver of summons.

Under penalties as provided by law pursuant to 28 U.S.C Section 1746, the undersigned certifies that the statements set forth in this affidavit are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

s/Panos T. Topalis
_____
Panos T. Topalis

11-12-21
_____
Date